# United States Court of Appeals
## For the First Circuit

No. 07-2720

UNITED STATES OF AMERICA,

Appellee,

v.

EDWIN TORRES-OLIVERAS,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Lisa Aidlin for appellant.
Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson Perez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

October 1, 2009

**STAHL**, **Circuit Judge**. Defendant-appellant Edwin Torres-Oliveras was convicted and sentenced pursuant to a plea agreement in which he admitted that he conspired to possess with intent to distribute "cocaine base, 'crack,' detectable amounts of cocaine, . . . and detectable amounts of heroin." As part of his plea, Torres-Oliveras stipulated to possession with intent to distribute "at least two (2) but less than three and one half (3.5) kilograms of cocaine." In the agreement, Torres-Oliveras also waived his statutory right to appeal his guilty plea or "any other respect of defendant's conviction in the above captioned case." The sentencing court adopted the government's recommended sentence of 108 months in prison followed by 8 years supervised release.

After sentencing, Torres-Oliveras filed a timely notice of appeal. Five months later, while his appeal was pending before this court, Torres-Oliveras submitted a pro se motion to the district court under 18 U.S.C. § 3582(c)(2), seeking the retroactive benefit of an amended sentencing guideline which reduced by two levels the base offense level for crimes involving crack cocaine. See U.S.S.G. App. C, Amend. 706 (2007). The district court rejected the motion, finding that the revised guideline did not apply to Torres-Oliveras' sentence because his plea agreement stipulated to possession with intent to distribute powder cocaine rather than crack cocaine. On appeal, Torres-

Oliveras contests his conviction and sentence on several grounds, none of which are availing.

1. <u>Waiver of Appeal</u>

Torres-Oliveras' direct appeal faces a formidable preliminary hurdle in that he agreed, in the plea agreement, to waive his right to appeal. He attempts to overcome this obstacle by arguing that his waiver of appeal is unenforceable because (a) the text of the waiver was confusing; (b) the district court failed to fully explain the waiver to him and ensure that he understood it; and (c) enforcement of the provision would work a miscarriage of justice because the plea agreement process was tainted by ineffective assistance of counsel.

The Federal Rules of Criminal Procedure require that before accepting a guilty plea the sentencing court "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. Pro. 11(b)(1)(N). This court held in <u>United States</u> v. <u>Teeter</u> that a waiver of statutory appellate rights is valid where a "defendant enter[ed] into it knowingly and voluntarily." 257 F.3d 14, 24 (1st Cir. 2001). We look to the text of the written plea agreement and the change-of-plea colloquy to determine whether the defendant "freely and intelligently" agreed to waive his right to appeal his forthcoming sentence. <u>Id.</u>

In addition, because Torres-Oliveras did not raise his claim of Rule 11 error before the district court, we review only for plain error. See United States v. Borrero-Acevedo, 533 F.3d 11, 15-16 (1st Cir. 2008) (citing United States v. Dominguez Benitez, 542 U.S. 74, 76, 78, 83, 85 (2004); United States v. Vonn, 535 U.S. 55, 58-59, 73 (2002)). This requires that Torres-Oliveras show "'(1) error, (2) that is plain, . . . (3) that affect[s] substantial rights, . . . [and that] (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 15 (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). We consider only the first element because we find that the district court made no error.

Torres-Oliveras first avers that the text of the plea waiver was confusing. We disagree. The agreement stated quite clearly that the defendant waived the right to appeal the following:

> A. Defendant's guilty plea and any other respect of defendant's conviction in the above captioned case;
>
> B. A sentence of imprisonment that does not exceed the number of months provided for in Offense Level 30 of the United States Sentencing Guidelines Manual (2006), at the Criminal History Category to be determined by the Court.
>
> The Offense Level mentioned in this paragraph does not necessarily constitute a reasonable estimate of the sentence that the parties expect will be imposed. The defendant acknowledges that this waiver

-4-

> should result in the dismissal of any appeal the defendant might file challenging his conviction or sentence in this case.

While Torres-Oliveras must concede that this language is clear as to the scope of the waiver, he suggests that sub-part B introduced an element of confusion. Indeed, at the change-of-plea hearing the district court expressed some initial concern that sub-part B could be read as converting the plea agreement from a <u>recommendation</u> to the court as to sentencing (a "Type B" plea agreement under Fed. R. Crim. Pro. 11(c)(1)(B)) into a <u>binding</u> plea agreement (a "Type C" agreement under Fed. R. Crim. Pro. 11(c)(1)(C)), thus removing the district court's sentencing discretion. But the district court was ultimately satisfied, as are we, that the first sentence of the paragraph immediately following sub-part B makes clear that the agreement constituted merely a recommendation from the parties as to sentencing and therefore preserved the court's discretion. Furthermore, even if the text created confusion as to the non-binding nature of the plea agreement, that would not impact our analysis of the clarity of the scope of the appellate waiver itself, which is a separate issue. Thus, we find no infirmity in the text of the waiver.

Torres-Oliveras next challenges the validity of the appellate waiver by arguing that the district court failed to comply with <u>Teeter</u> and Rule 11(b)(1)(N) by not "call[ing] the

waiver to the defendant's attention and question[ing] him closely in order to ensure that he has a full understanding of the waiver provisions and that he has knowingly and voluntarily elected to waive his right of appeal." United States v. Gil-Quezada, 445 F.3d 33, 36 (1st Cir. 2006). We disagree. At the change-of-plea hearing, the district court questioned the defendant in great detail about his understanding of many aspects of the agreement, including this exchange:

> THE COURT: Do you understand that by entering into this Plea Agreement you will have waived or given up your right to appeal all or part of the sentence?
>
> THE DEFENDANT: Yes.

Torres-Oliveras argues that his case is analogous to United States v. Quirindongo-Collazo, in which we voided a plea agreement where "the magistrate judge asked just one question about the appeal waiver." 213 Fed. Appx. 10, 2007 WL 152626, at *2 (1st Cir. Jan. 23, 2007).[1] However, in Quirindongo-Collazo there was additional evidence that at the sentencing hearing the "judge, defense counsel, the government, and the probation officer had an extensive discussion premised on the assumption that appellant could and would appeal" and during that discussion "there was no mention by any party of the appeal waiver." Id. In contrast, at sentencing

---

[1]We note that this case was not selected for publication in the West Federal Reporter series. Therefore, in keeping with Local Rule 32.1, we will consider this opinion "for [its] persuasive value but not as binding precedent."

in this case, the district court was careful to explain that the defendant only possessed a limited right of appeal given the waiver of appeal clause in his plea agreement:

> Mr. Torres, you can appeal your conviction if you feel that your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceedings <u>that was not waived by your guilty plea</u>.

(Emphasis added). By its careful statement, the court avoided giving a "blanket assurance about the right of appeal," against which we cautioned in <u>Teeter</u>. <u>See</u> 257 F.3d at 25 (noting that, where the defendant has agreed to waive his appeal rights, the court should avoid making broad assurances about the right of appeal because doing so "mudd[ies] the waters and tend[s] to instill false hope"); <u>see also</u> <u>Gil-Quezada</u>, 445 F.3d at 37 (finding that the court, at the change-of-plea hearing, did not mislead when it stated that the defendant could appeal "under some circumstances"). We therefore find no error.

Torres-Oliveras' final attack on the validity of his appeal waiver invokes <u>Teeter</u>'s miscarriage of justice exception. In <u>Teeter</u>, we confirmed that the appeals court retains "inherent power to relieve the defendant of the waiver . . . where a miscarriage of justice occurs." 257 F.3d at 25-26. Torres-Oliveras argues that his trial counsel's alleged ineffective assistance during the plea bargaining process means that enforcing

the waiver would work an unfairness.  Indeed, we noted in Teeter that the waiver exception could apply in cases involving a claim "that the plea proceedings were tainted by ineffective assistance of counsel."  Id. at 25, n.9.

The crux of Torres-Oliveras' ineffective assistance claim is that his attorney grievously erred by permitting him to sign a plea agreement stipulating to possession of an amount of powder cocaine rather than crack cocaine even though the attorney was allegedly aware that (1) Torres-Oliveras' role in the offense allegedly involved crack not powder cocaine, and (2) a sentencing guideline amendment was set to take effect within weeks after Torres-Oliveras' sentencing which would have lowered the penalty for crack cocaine offenses.

On appeal, the appellant vehemently insists that his trial attorney's errors are "crystal clear."  However, we cannot agree because the record before us is ambiguous as to the drug (or drugs) involved in the conspiracy and the rationale behind Torres-Oliveras' stipulation to powder cocaine.[2]  Given this ambiguity, we

_____

[2]For example, the grand jury indictment indicates that the object of the conspiracy was to distribute three types of drugs, "cocaine base (crack), cocaine and heroin."  In a slightly different description of the crime, the plea agreement states that Torres-Oliveras agreed to plead guilty to count one of the indictment, summarized as "possess[ion] with intent to distribute fifty (50) grams or more of cocaine base, 'crack,' detectable amounts of cocaine . . . and detectable amounts of heroin."  In yet a third iteration of the crime, also in the plea agreement, Torres-Oliveras accepted responsibility for "at least two (2) but less than three and one half (3.5) kilograms of cocaine."  In addition,

-8-

cannot say whether his attorney's apparent decision that he should stipulate to powder rather than crack was a strategic choice,[3] an error, or an accurate description of the crime. In addition, it is not clear on the record before us how Torres-Oliveras' sentence would have been different had the plea agreement stipulated to crack rather than cocaine, given that we do not know what amount of crack he would have been held responsible for under such a hypothetical plea. (And because we do not know what such a plea agreement might have looked like, we cannot predict what effect the revised crack sentencing guideline would have had on Torres-Oliveras' ultimate sentence.) As we have said, "The miscarriage of justice exception requires a strong showing of innocence, unfairness, or the like," and the exception "must be applied sparingly and without undue generosity." Gil-Quezada, 445 F.3d at 37 (internal quotation omitted). No such strong showing is evident on the record.[4]

---

the change-of-plea hearing included references by the court and the parties to several different descriptions of the drug or drugs involved in the crime.

[3]In other words, in may be that Torres-Oliveras received a lower sentence than he otherwise would have precisely because he stipulated to powder rather than crack cocaine. The sentence disparity extant at the time suggests this might well have been the case.

[4]Torres-Oliveras also devotes one sentence of his brief to an additional miscarriage of justice argument -- that the district court misled the defendant at sentencing by stating that he could file a sentencing reduction motion based on the pending crack sentencing guideline amendment after the amendment took effect.

In addition, to the extent that Torres-Oliveras seeks direct review of his ineffective assistance claim, we deny such a review due to the factual ambiguities surrounding the defense attorney's performance. "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). A collateral proceeding under 28 U.S.C. § 2255, "in which the parties and the district court can address factual matters relevant to the issue," is the proper mechanism for addressing Torres-Oliveras' ineffective assistance claim.[5] United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002).

Having determined that Torres-Oliveras' waiver of appeal rights was knowing and voluntary and that enforcement of the waiver will not work a miscarriage of justice, we conclude that Torres-Oliveras' direct appeal of his conviction and sentence is not permitted under the terms of the waiver to which he assented. We discern no error, plain or otherwise.

_____

Due to a failure to explain in any detail how this alleged error would work a miscarriage of justice, we deem this argument waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[5]In his brief, Torres-Oliveras also suggests that his trial counsel was deficient in that he failed to preserve a challenge to the sentencing disparities between crack and powder cocaine. This, too, is a claim properly raised in a collateral challenge.

2. Motion for Reduction of Sentence

We turn briefly to Torres-Oliveras' second claim. On appeal, he seeks review of the district court's denial of his pro se motion for modification of his term of imprisonment under 18 U.S.C. § 3582(c)(2).[6] As a preliminary matter, the government argues that the district court lacked jurisdiction to entertain this motion because Torres-Oliveras filed it in the district court five months after he filed his notice of appeal. In other words, the initial conviction and sentencing were already pending on appeal before this court when Torres-Oliveras filed his motion for sentence modification in the district court.

The government's argument is consistent with the general rule that "[t]he filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982).[7] However, this

---

[6]Section 3582(c)(2) permits a court to reduce the term of imprisonment for a defendant who was sentenced based on a "sentencing range that has subsequently been lowered by the Sentencing Commission."

[7]Indeed, this court previously determined that "a docketed notice of appeal suspends the sentencing court's power to modify a defendant's sentence." United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987). We note, however, that Distasio involved a defendant who sought a sentence reduction under Rule 35(b) of the Federal Rules of Criminal Procedure, which provides that a court may reduce a defendant's sentence within one year of sentencing if, after sentencing, the defendant "provided substantial assistance in

-11-

circuit and others have recognized limited exceptions to this judge-made rule. See, e.g., 16A Charles Alan Wright et al., Federal Practice and Procedure § 3949.1 (4th ed. 2009); United States v. Ortega, 859 F.2d 327, 334-35 (5th Cir. 1988). Arguably, this case falls within one of the recognized exception. In any event, even if Torres-Oliveras were to correct any potential defect by refiling his motion with the district court after this appeal were resolved, the results on the merits would be the same.

We therefore review the district court's denial of a motion for relief under § 3582(c) for abuse of discretion, United States v. Rodriguez-Pena, 470 F.3d 431, 432 (1st Cir. 2006) (per curiam), and find no such error. We agree with the district court that because Torres-Oliveras stipulated to possession with intent to distribute powder cocaine, the revised guideline regarding crack cocaine possession was simply not applicable to his case.

3. *Kimbrough* Claim

Finally, we briefly address Torres-Oliveras' claim that the district court committed plain error by failing to consider the sentencing guideline disparity between crack and powder cocaine. Because Torres-Oliveras failed to raise below the reasonableness of

---

investigating or prosecuting another person." See Fed. R. Crim. Pro. 35(b). Torres-Oliveras sought a sentencing reduction under a separate provision, 18 U.S.C. § 3582(c)(2).

the crack to powder cocaine ratio, we review this <u>Kimbrough</u> claim[8] for plain error.  <u>United States</u> v. <u>Matos</u>, 531 F.3d 121, 122 (1st Cir. 2008).  We find no error, plain or otherwise.  Torres-Oliveras stipulated to and was sentenced for possession with intent to distribute powder cocaine, not crack cocaine.  Therefore, because Torres-Oliveras' sentence was not based on a crime involving crack cocaine, there is simply no <u>Kimbrough</u> issue here.  It may be that Torres-Oliveras' <u>Kimbrough</u> argument would have some relevance in a collateral claim for ineffective assistance of counsel, but given the plain language of his plea agreement there is no such relevance on direct review.

For the foregoing reasons we **<u>dismiss</u>** Torres-Oliveras' appeal.

---

[8] A "Kimbrough claim" arises from the Supreme Court's 2007 holding that because the sentencing guidelines are "effectively advisory" a sentencing court "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Kimbrough v. United States, 128 S. Ct. 558, 564 (2007).