# United States Court of Appeals
## For the First Circuit

No. 08-2566

ARTHUR SOTIRION,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Howard, Circuit Judge.

Thomas J. Butters, with whom Matthew D. Thompson and Butters Brazilian LLP were on brief, for appellant.
Steven H. Breslow, Assistant United States Attorney, with whom Michael K. Loucks, Acting United States Attorney was on brief, for appellee.

August 4, 2010

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ, Circuit Judge.** Arthur Sotirion pled guilty to racketeering and tax offenses pursuant to a plea agreement that contained a waiver of his right to directly appeal and collaterally attack his conviction or sentence. He appeals from the district court's dismissal of his 28 U.S.C. § 2255 petition to vacate, set aside or correct his sentence, in which he claimed that the district court erred in calculating his advisory sentencing guidelines range. He contends that the appellate waiver[2] in his plea agreement is invalid because the court failed to specifically apprise him of the waiver at his change-of-plea hearing as required by Federal Rule of Criminal Procedure 11(b)(1)(N), and therefore the waiver was not knowing and voluntary. He further contends that the waiver should not be enforced because such enforcement would constitute a miscarriage of justice. The government responds that Sotirion procedurally defaulted his challenge to the appellate waiver by not first raising it on direct appeal, and alternatively contends that Sotirion's appellate waiver is valid and enforceable.

Rejecting the government's procedural default argument, we nevertheless conclude that Sotirion has not demonstrated that his appellate waiver is invalid on the basis of a plain error challenge to the district court's compliance with Rule 11(b)(1)(N). We further conclude that despite the failure of this plain error

_____

[2] We use the term "appellate waiver" to encompass the provision's waiver of both the right to bring a collateral challenge and the right to file a direct appeal.

-2-

challenge to the Rule 11 procedure, we retain the discretion to refuse to enforce the appellate waiver if such enforcement would work a miscarriage of justice, see United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001). However, Sotirion has not demonstrated that enforcement of the waiver would result in a miscarriage of justice in this case. Accordingly, we affirm.

**I.**

Because Sotirion's conviction and sentence followed the entry of a guilty plea, we draw the facts from the change-of-plea colloquy and the uncontested portions of the revised presentence investigation report. See United States v. Jimenez, 512 F.3d 1, 2 (1st Cir. 2007).

Sotirion began working at the Springfield Housing Authority (SHA) in 1970 and served as the Assistant Executive Director of Operations for many years until his resignation in April 2003. In that position, he oversaw the operation and maintenance of SHA housing projects and played a critical role in the awarding of contracts. Together with Raymond Asselin, Sr., the Executive Director of the SHA, Sotirion orchestrated a massive scheme of bribery, embezzlement, and fraud. As of 1993, Sotirion and Asselin began to solicit and receive bribes from SHA contractors in exchange for awarding them contracts and other preferential treatment at SHA. Sotirion also embezzled money directly from SHA. Sotirion orchestrated this conspiracy over a

ten-year period, managing at least a dozen corrupt contractors and SHA employees.  In addition, he did not report the income received from these schemes on his federal income tax returns.

In January 2005, a grand jury returned a superseding indictment against Sotirion and twelve co-defendants, charging Sotirion with ninety-eight counts related to the corrupt operation of the SHA from 1988 until April 2003. Sotirion was charged with multiple counts of racketeering and conspiracy to commit racketeering, 18 U.S.C. § 1962(c),(d); bribery and conspiracy to commit bribery, 18 U.S.C. §§ 201, 371; conspiracy to commit theft against the government, 18 U.S.C. §§ 371, 641; mail and wire fraud and conspiracy to commit mail and wire fraud, 18 U.S.C. §§ 371, 1341, 1343, 1346; extortion, 18 U.S.C. § 1512; witness tampering, 18 U.S.C. § 1512; and filing false income tax returns, 26 U.S.C. § 7206(1).

Pursuant to a negotiated plea agreement, Sotirion pled guilty to three counts[3] and the government agreed to dismiss the remaining ninety-five counts against him.  The plea agreement also substantially limited Sotirion's forfeiture and restitution obligations.  The government agreed that all of Sotirion's forfeiture obligations would be discharged by Sotirion's forfeiture

---

[3] Sotirion pled guilty to one count of racketeering, 18 U.S.C. § 1962(c), one count of conspiracy to commit racketeering, 18 U.S.C. § 1962(d) and one count of filing a false income tax return, 26 U.S.C. § 7206(1).

of specified properties, and that in lieu of forfeiture he could pay half the market value of these properties, which amounted to only $178,750.

The plea agreement contained a separate section titled "Waiver of Rights to Appeal and to Bring Collateral Challenge" that stated:

> Defendant is aware that Defendant has the right to challenge his sentence and guilty plea on direct appeal. Defendant is also aware that Defendant may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).
>
> In consideration of the concessions made by the U.S. Attorney in this agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:
>
> (1) Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and other issues;
>
> (2) The adoption by the District Court at sentencing of any of the positions found in Paragraph 3 which will be advocated by the U.S. Attorney with regard to offense conduct, adjustments and/or criminal history under the U.S. Sentencing Guidelines; and
>
> (3) The imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney, as set out in Paragraph 4 and, even if the Court rejects one or more positions advocated by the U.S. Attorney or Defendant with regard to the application of the U.S. Sentencing Guidelines.

-5-

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this agreement which are held by the First Circuit to have retroactive effect.

Paragraph three of the plea agreement set forth the positions the government would take at sentencing: the government would argue for a base offense level of 28 for bribery resulting in government losses of between $1 million and $2.5 million under U.S.S.G. § 2C1.1(a)-(b) and § 2E1.1; would argue for certain adjustments in that offense level, including a two-level increase under U.S.S.G. § 3B1.3 because the offense involved an abuse of a position of trust; and would recommend an adjusted offense level of 33, for a sentencing range of 135-168 months. The plea agreement further stated that Sotirion could contest these calculations at sentencing. Paragraph four of the agreement stated that the government would recommend a term of incarceration within the sentencing range of 135-168 months.

At the change-of-plea hearing before a magistrate judge, the judge inquired into Sotirion's understanding of the plea agreement and the consequences of his plea. The judge called attention to the waiver provision, asking, "And do you understand that you are waiving your right to appeal this case except I guess if there are legal issues that arise subsequent hereto. Okay?" Sotirion responded, "Yes." In addition, the magistrate judge

-6-

confirmed with Sotirion that (1) he had had an opportunity to go over the plea agreement in detail, (2) he understood the terms of the plea agreement, (3) he understood that at sentencing the government would argue for a two-level increase for abuse of trust and would argue for a sentencing range of 135-168 months, (4) there were no aspects of the plea agreement that he did not understand or wanted to raise with the court, and (5) he had "gone over [the plea agreement] line by line" with counsel.

At sentencing, the court calculated an adjusted offense level of 30, based in part on the two-level increase for abuse of a position of trust. Although defense counsel successfully challenged several offense-level increases sought by the government,[4] counsel did not object to the increase for abuse of trust. This adjusted offense level, combined with Sotirion's criminal history category of I, resulted in an advisory sentencing guidelines range of 97-121 months. The court sentenced Sotirion to 109 months of imprisonment, the middle of the guidelines range.[5] At the close of the hearing, the court stated that Sotirion had "a

---

[4] Defense counsel successfully argued that a two-level increase for obstruction of justice was inapplicable, U.S.S.G. § 3C1.1, and that only a three-level increase for his role as a manager in the offense was applicable, rather than a four-level increase for his role as a leader, U.S.S.G. § 3B1.1(a),(b).

[5] The court sentenced Sotirion to 109 months on each of the two racketeering counts and 36 months on the income tax count, all to be served concurrently.

right to appeal the sentence.  Even though you pled guilty, that does not limit your right to appeal."

In January 2008, Sotirion filed a § 2255 petition arguing that the increase for abuse of trust was not applicable to his offense under the sentencing guidelines.  See U.S.S.G. § 2C1.1, cmt. 6 (stating that an increase for abuse of trust under § 3B1.3 does not apply to an offense level calculated under § 2C1.1).  He contended that his sentence was therefore based on inaccurate information in violation of due process and was the result of ineffective assistance of counsel at sentencing.  The district court dismissed the petition, noting that the government did not contest that a "technical error" had been made in the advisory guidelines calculation, but concluding that the appellate waiver was knowing and voluntary and its enforcement would not constitute a miscarriage of justice.  This appeal followed.

**II.**

**A. Procedural Default**

The government first contends that Sotirion has procedurally defaulted his challenge to the validity of the appellate waiver by failing to raise it on direct review, and therefore he can obtain collateral relief only if he can demonstrate cause for his procedural default and actual prejudice resulting from the alleged error.  See Bousley v. United States, 523 U.S. 614, 622 (1998).  However, as the government concedes, it

-8-

did not raise this procedural default argument in the district court, and the district court did not dismiss Sotirion's § 2255 petition on this basis. Because the government failed to raise procedural default as a defense to Sotirion's § 2255 petition, we deem it waived. See Barreto-Barreto v. United States, 551 F.3d 95, 98 (1st Cir. 2008) ("The government waived the issue of procedural default by not raising it in response to the § 2255 petitions below. We decline to overlook the government's waiver."); Oakes v. United States, 400 F.3d 92, 96 (1st Cir. 2005) ("[P]rocedural default is an affirmative defense and . . . therefore, the government may lose the defense by neglecting to raise it in a response to a habeas petition.").

## B.  Appellate Waiver

The government next contends that Sotirion entered into a valid and enforceable waiver of his right to appeal or collaterally attack his sentence, and therefore his claim of sentencing error is barred. Sotirion argues that the waiver provision is unenforceable because (1) the magistrate judge did not inquire specifically into his waiver of appellate rights at the change-of-plea colloquy, as required by Federal Rule of Criminal Procedure 11(b)(1)(N), and therefore did not ensure that he entered into the waiver knowingly and voluntarily, and (2) enforcement of the waiver would result in a miscarriage of justice.

In this circuit, presentence waivers of appellate rights are enforceable if they meet certain criteria. Teeter, 257 F.3d at 23. First, we require that the defendant enter into the waiver "knowingly and voluntarily." Id. at 24-25; accord United States v. Torres-Oliveras, 583 F.3d 37, 40 (1st Cir. 2009). In examining whether the defendant knowingly and voluntarily waived his appellate rights, the text of the written plea agreement and the change-of-plea colloquy are of critical importance. Teeter, 257 F.3d at 24. We evaluate whether the written plea agreement "contains a clear statement elucidating the waiver and delineating its scope," and whether the district court "inquire[d] specifically at the change-of-plea hearing into any waiver of appellate rights," as required by Rule 11(b)(1)(N). Id. Second, even if the waiver is knowing and voluntary, we retain discretion not to enforce the waiver if it would result in a "miscarriage of justice." Id. at 25; accord Torres-Oliveras, 583 F.3d at 42.

**1. Claim of Rule 11(b)(1)(N) Error**

Sotirion contends that the magistrate judge failed to adequately inform him of the scope of his appellate waiver as instructed by Rule 11(b)(1)(N), and therefore his appellate waiver was not knowing and voluntary.

Rule 11(b)(1)(N) states that prior to accepting the defendant's guilty plea, the court "must address the defendant personally in open court" and "inform the defendant of, and

-10-

determine that the defendant understands, the following: . . . (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." This provision was added to Rule 11 in 1999 to aid courts in "ensur[ing] that waivers of appellate rights are knowing and voluntary." United States v. Borrero-Acevedo, 533 F.3d 11, 14 (1st Cir. 2008) (citing Fed. R. Crim. P. Advisory Committee 1999 Notes).

In United States v. Vonn, 535 U.S. 55 (2002), the Supreme Court addressed the standard for reviewing a defendant's unpreserved claim that his guilty plea should be set aside on the basis of Rule 11 error -- in that case, the court's failure to apprise the defendant of his right to counsel if he went to trial. The Court held that a defendant who does not lodge a timely objection to Rule 11 error in the district court must satisfy the plain error standard in Federal Rule of Criminal Procedure 52(b). Id. at 58-59. In a later case, the Court clarified the showing a defendant must make to obtain relief for an unpreserved claim of Rule 11 error under the third prong of the plain error test. United States v. Dominguez Benitez, 542 U.S. 74 (2004). The Court held that "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 83.

In Borrero-Acevedo, as a matter of first impression, we applied Vonn and Dominquez Benitez to a defendant's claim that his waiver of appellate rights should be set aside because the district court failed to comply with Rule 11(b)(1)(N) at his change-of-plea colloquy. We held that "the plain error standard applies to unpreserved claims of violations of Fed. R. Crim. P. 11(b)(1)(N)," reasoning that Vonn was not by its terms restricted to particular types of Rule 11 errors. Borrero-Acevedo, 533 F.3d at 13, 16. We further held that, in order to establish that the Rule 11(b)(1)(N) error affected his substantial rights under the third prong of the plain error test, the defendant must show "a reasonable probability that he would not have entered the plea had the error not been made." Id. at 13-14.

Sotirion concedes that his unpreserved Rule 11(b)(1)(N) challenge to the waiver is subject to plain error review under Vonn and Borrero-Acevedo.[6] "In order to show plain error, a defendant

[6] We note that the plain error standard applies only where, as here, a defendant's challenge to his appellate waiver is based on an "unpreserved claim of Rule 11(b)(1)(N) error." Borrero-Acevedo, 533 F.3d at 13. However, a defendant could also claim that his appellate waiver was not knowing and voluntary on grounds unrelated to the district court's compliance with Rule 11(b)(1)(N) -- for example, on the ground that the defendant was incompetent when he signed the waiver. Plain error review would not apply if the defendant challenged the knowing and voluntary nature of his appellate waiver on grounds independent of the district court's compliance with Rule 11(b)(1)(N). See United States v. Goodson, 544 F.3d 529, 539 n.9 (3d Cir. 2008) ("The plain error standard does not apply when a defendant's challenge to the knowing or voluntary nature of a waiver does not involve the district court's compliance with the plea colloquy required by the Rule. For

must demonstrate that there is (1) error, (2) that is plain, and (3) that affect[s] substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  Borrero-Acevedo, 533 F.3d at 15 (internal citation and quotation marks omitted).

The magistrate judge's inquiry into Sotirion's appellate waiver during the change-of-plea colloquy, although not as thorough or precise as it could have been, did not constitute obvious Rule 11(b)(1)(N) error under the second prong of the plain error test. Sotirion does not dispute that his plea agreement contained a clear waiver of his right to directly appeal or collaterally attack his sentence.  He agreed to waive his appellate rights if, inter alia, the court imposed a sentence that did not exceed "that being recommended by the U.S. Attorney, as set out in Paragraph 4," 135-168 months.  Sotirion's 109-month sentence falls squarely within the scope of this waiver.[7]

example, a defendant who claims that he was misled or coerced into entering the agreement, or that he was incompetent when he signed the waiver, challenges the validity of the waiver itself, not the Rule 11 colloquy.  Such a challenge would receive de novo review without the need for objection in the district court.").

[7] This is not a case where the defendant agreed to waive his right to appeal only if the court imposed a sentence that fell within the correct sentencing guidelines range.  Cf. United States v. McCoy, 508 F.3d 74, 78 (1st Cir. 2007) (concluding that, where waiver stated that it applied only if the sentence imposed fell

The magistrate judge specifically called attention to the waiver provision during the change-of-plea colloquy, albeit briefly, asking, "And do you understand that you are waiving your right to appeal this case except I guess if there are legal issues that arise subsequent hereto. Okay?" Sotirion responded, "Yes." The magistrate judge did not fail to address the waiver provision entirely, nor did he contradict the terms of the written waiver. Thus, this colloquy is different from the one found deficient in Teeter, on which Sotirion primarily relies. See Teeter, 257 F.3d at 26-27 (finding waiver not knowing and voluntary where district court not only omitted any mention of appellate waiver during change-of-plea colloquy, but also directly contradicted waiver, asking "[D]o you also understand that both you and the government will have a right to appeal any sentence I impose?").

Furthermore, at the plea colloquy, Sotirion, a college graduate, stated that he had reviewed the plea agreement "line by line" with counsel, he understood the terms of the agreement, and there were no aspects of the agreement he wished to raise with the court. He further stated that he understood that at sentencing, the government would argue for a two-level increase for abuse of trust and a sentencing range of 135-168 months. Defense counsel confirmed that he had discussed the plea agreement with Sotirion.

"within the guidelines range," without setting forth a proposed sentencing range, defendant waived only his right to appeal a correct application of the guidelines).

-14-

Sotirion contends that the magistrate judge's statement that he was waiving his appellate rights "except I guess if there are legal issues that arise subsequent hereto" was misleading because it suggested that Sotirion retained the right to appeal or collaterally attack his sentence based on errors that occurred <u>after</u> the entry of the guilty plea -- such as, for example, errors at sentencing. The magistrate judge's language does not support this strained interpretation. We agree with the government that the judge's mention of an exception for "legal issues that arise subsequent hereto" referred to the plea agreement's clear statement that the waiver "shall not apply to appeals or challenges based on new legal principles . . . ."

Sotirion further argues that the Rule 11 colloquy was inadequate because the magistrate judge did not separately discuss the waiver of his right to collaterally attack his sentence, as opposed to his right to a direct appeal. Although the district court must "inquire specifically" at the hearing "into any waiver of appellate rights," we have refrained from requiring any "mandatory language for such an inquiry because the circumstances will vary from case to case." <u>Teeter</u>, 257 F.3d at 24 & n.7; <u>see also</u> <u>United States</u> v. <u>Chandler</u>, 534 F.3d 45, 50 (1st Cir. 2008) (holding that court need not "recite the appeal waiver verbatim"). Instead, the court's inquiry "should be specific enough to confirm the defendant's understanding of the waiver and [his] acquiescence

-15-

in the relinquishment of rights that it betokens."  Teeter, 257
F.3d at 24 n.7.  Although it would have been preferable for the
magistrate judge to specifically refer to the waiver of the right
to collateral challenge as well as the waiver of the right to
direct appeal, the judge's inquiry adequately confirmed Sotirion's
understanding that he was giving up the important right to
challenge his sentence after conviction.

Finally, Sotirion points out that at sentencing, the
district judge incorrectly stated that he had the right to appeal
his sentence.  However, the judge's statement at sentencing, made
approximately five months after the change-of-plea colloquy, does
not serve to invalidate Sotirion's earlier waiver.  United States
v. Gil-Quezada, 445 F.3d 33, 36-37 (1st Cir. 2006) ("In this case,
what the judge said at sentencing is irrelevant to our waiver
inquiry. . . . The judge's comments at the disposition hearing,
nearly four months later, have no bearing on whether Gil knowingly
and voluntarily waived his appellate rights when he entered the
plea."); Teeter, 257 F.3d at 25 (stating that a sentencing court's
broad assurances of the right to appeal "muddy the waters" and are
"to be avoided," but do not "effect a per se nullification of a
plea-agreement waiver of appellate rights.").

On this record, we conclude that Sotirion has not
demonstrated obvious Rule 11(b)(1)(N) error.  We therefore need not

address whether he has not met his burden under the third and fourth prongs of the plain error test.

### 2. Miscarriage of Justice

Sotirion further contends that even if his waiver is not invalidated on the basis of Rule 11(b)(1)(N) error, we should not enforce the waiver because it would work a miscarriage of justice. This requires us to confront a question raised but not answered by Borrero-Acevedo: whether, after Vonn and Dominguez Benitez, the miscarriage of justice exception set forth in Teeter remains viable.

In Teeter, we cautioned that because appellate waivers "are made before any manifestation of sentencing error emerges, appellate courts must remain free to grant relief from them in egregious cases." 257 F.3d at 25. Appellate waivers are meant to "bring finality to proceedings conducted in the ordinary course," but are not intended to leave defendants "totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." Id. Therefore, we held that "if denying a right of appeal would work a miscarriage of justice, the appellate court, in its sound discretion, may refuse to honor the waiver." Id.

This miscarriage of justice exception is meant only for "egregious cases" and is to be applied "sparingly and without undue generosity." Id. at 25, 26; see also id. at 25 n. 10 (listing examples of a miscarriage of justice, including where the defendant

-17-

claims that the sentence imposed exceeded the maximum penalty permitted by law or that the sentence violated a material term of the plea agreement). The miscarriage of justice standard "requires a strong showing of innocence, unfairness, or the like," Gil-Quezada, 445 F.3d at 37, and is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error," Teeter, 257 F.3d at 26.

As a threshold matter, the government questions whether, after Vonn and Dominguez Benitez, Teeter's narrow miscarriage of justice exception remains viable. In Borrero-Acevedo, 533 F.3d at 18-19, we stated, in dicta:

> In light of Vonn and Dominguez Benitez, one might question what is left of this circuit's former rule on enforceability of waiver clauses, announced in United States v. Teeter. . . .
>
> More precisely, the question after Vonn and Dominguez Benitez is whether there is any discretionary power left in this court to decline to enforce a waiver of appeal clause where we conclude that enforcing the waiver would be a miscarriage of justice.

We declined to reach that question in Borrero-Acevedo, and Sotirion urges us to address it in this case.

We conclude that the Supreme Court's decisions in Vonn and Dominguez Benitez did not deprive us of the "inherent power" to refuse to enforce an appellate waiver where a miscarriage of

-18-

justice occurs.[8]  Teeter, 257 F.3d at 25-26.  Teeter was concerned with two separate problems posed by appellate waivers: first, as with other waivers of rights, whether the appellate waiver was entered into knowingly and voluntarily, and second, in recognition of the particular dangers posed by a prospective waiver of the right to challenge errors that have not yet occurred, whether enforcement of the waiver would work a miscarriage of justice.  Id. at 23-25.

In Borrero-Acevedo, we applied Vonn and Dominguez Benitez to hold that the plain error standard governs when a defendant challenges his appellate waiver on the basis of an unpreserved claim of Rule 11(b)(1)(N) error.  However, the adequacy of the change-of-plea colloquy under Rule 11(b)(1)(N) and the clarity of the written plea waiver both relate to Teeter's first concern: whether the waiver was knowing and voluntary.  That inquiry is distinct from the question of whether, even if the appellate waiver was entered into knowingly and voluntarily, its enforcement would work a miscarriage of justice.  See Teeter, 257 F.3d at 25-26 (stating that waivers are "presumptively valid" if knowing and voluntary, but are still subject to a general exception for miscarriage of justice); see also, e.g., United States v. McCoy,

---

[8] Judge Howard believes that the above-quoted dicta from Borrero-Acevedo is contextually limited to claims of Rule 11 error, and thus he believes that there is no real tension between that dicta and our holding here that we may decline to enforce a waiver of appeal.

508 F.3d 74, 77 (1st Cir. 2007) ("In this circuit, an appeal waiver is enforceable if the defendant knowingly and voluntarily agreed to its terms and enforcement would not result in miscarriage of justice.") (emphasis added); Gil-Quezada, 445 F.3d at 36 (explaining that, under Teeter, "even if the plea agreement and the change-of-plea colloquy pass muster, we will not enforce the waiver if doing so would work a miscarriage of justice").

Thus, a defendant who fails on his Rule 11(b)(1)(N) challenge to his appellate waiver, as Sotirion has here, must nevertheless be afforded the opportunity to demonstrate that enforcement of the waiver would work a miscarriage of justice. In cases decided after Vonn and Dominguez Benitez, we have consistently reaffirmed that the appellate court "retains 'inherent power to relieve the defendant of the waiver . . . where a miscarriage of justice occurs.'" Torres-Oliveras, 583 F.3d at 42 (quoting Teeter, 257 F.3d at 25-26) (evaluating Rule 11(b)(1)(N) challenge to appellate waiver under plain error standard, but then separately analyzing whether enforcement of waiver would constitute miscarriage of justice); see also, e.g., United States v. Isom, 580 F.3d 43, 50 (1st Cir. 2009) ("Appellate waivers are binding if . . . the denial of the right to appeal would not be a substantial miscarriage of justice."); United States v. Padilla Colon, 578 F.3d 23, 28 (1st Cir. 2009) (same). Other circuits that apply a similar miscarriage of justice exception have likewise affirmed the

exception's continued viability after <u>Vonn</u> and <u>Dominquez Benitez</u>.

<u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Corso</u>, 549 F.3d 921, 928-31 (3d Cir. 2008) (evaluating challenge to waiver based on alleged Rule 11(b)(1)(N) violation for plain error, and then separately addressing whether enforcement of the waiver would constitute a miscarriage of justice).[9]

In this case, however, we conclude that enforcement of the appellate waiver would not work a miscarriage of justice. Sotirion's § 2255 petition claims that the district court erred in applying a two-level increase for abuse of trust in its calculation of his advisory sentencing guidelines range. He correctly points out that his base offense level was calculated under U.S.S.G. § 2C1.1, and the commentary to this provision states that the § 3B1.3 increase for abuse of trust shall not be applied. <u>See</u> U.S.S.G. §2C1.1, cmt. 6. At the time, all of the parties involved,

_____

[9] We note that there is an open question of whether, and the extent to which, the miscarriage of justice inquiry under <u>Teeter</u> overlaps with the fourth prong of the plain error test, which asks whether the claimed Rule 11(b)(1)(N) error "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings," <u>Borrero-Acevedo</u>, 533 F.3d at 15 (internal quotation marks and citation omitted). <u>See</u>, <u>e.g.</u>, <u>Corso</u>, 549 F.3d at 931 n.3 (noting the question but declining to resolve it). We need not resolve that issue here, as we conclude that Sotirion's Rule 11(b)(1)(N) claim fails on the second prong of the plain error test and therefore we do not reach the third and fourth prongs. We therefore do not speculate whether there could be situations in which a defendant claiming Rule 11(b)(1)(N) error fails to meet his burden under the third and fourth prongs of the plain error test, and yet nevertheless is able to demonstrate a miscarriage of justice under <u>Teeter</u>.

-21-

including the probation officer, the district judge, defense counsel, and the government, failed to realize that the abuse-of-trust increase was inapplicable. If the district court had not erroneously applied the two-level increase, it would have calculated an advisory guidelines range of 78-97 months rather than 97-121 months.

This miscalculation of the advisory guidelines range is precisely the kind of "garden-variety" claim of error contemplated by Sotirion's appellate waiver. Teeter, 257 F.3d at 26. Such an error, even if under ordinary circumstances it would constitute reversible error, cannot "vault the hurdle erected by the waiver." United States v. Calderon-Pacheco, 564 F.3d 55, 59 (1st Cir. 2009) (holding that alleged error was "a garden-variety claim that the sentencing court misunderstood the preferred approach to consecutive versus concurrent sentences under the advisory guidelines" and did not "even closely approach[]" the miscarriage of justice standard); see also United States v. Cardona-Díaz, 524 F.3d 20, 23-24 (1st Cir. 2008) (holding that district court's erroneous belief that defendant had agreed to an 87-month sentence, when in fact the plea agreement stated only that the government would recommend an 87-month sentence, did not work a miscarriage of justice); United States v. Edelen, 539 F.3d 83, 87 (1st Cir. 2008) (finding claims that court erred in applying official-victim sentencing enhancement and failing to consider sentencing disparity

between crack and powder cocaine did not constitute miscarriage of justice); Corso, 549 F.3d at 931 (holding that alleged errors in application of abuse-of-trust and number-of-victim enhancements in calculating guidelines range did not constitute miscarriage of justice). Sotirion does not claim that he was sentenced in excess of the maximum penalty permitted by law, or that his sentence violated a material term of his plea agreement. See Teeter, 257 F.3d at 25 n. 10. "If the mere fact that a defendant has arguments he could potentially invoke on appeal were allowed to invalidate a waiver, then appellate waivers would become meaningless." Edelen, 539 F.3d at 87.

Indeed, far from working a miscarriage of justice, Sotirion's plea agreement conferred significant benefits on him. Pursuant to the plea agreement, the government agreed to dismiss 95 of the 98 counts against Sotirion arising from his orchestration of a massive, decade-long scheme of bribery, embezzlement, and fraud in the operation of the SHA. In addition, his forfeiture and restitution obligations were substantially limited and he retained the right to contest each of the government's positions at sentencing. The district court acknowledged at the hearing on Sotirion's § 2255 petition that the sentencing guidelines range did have "some role" in the court's decision about what sentence to impose on Sotirion. However, the court ultimately sentenced him to 109 months, a term 59 months below the upper sentence sought by the

government and only 12 months above the advisory guidelines range that would have applied if the abuse-of-trust enhancement had not been adopted.

In an effort to suggest that his claim is not merely a claim of garden-variety sentencing error but instead has constitutional dimensions, Sotirion argues that the guidelines error violated his due process rights and was the result of ineffective assistance of counsel at sentencing. Based on the misapplication of the abuse-of-trust enhancement, he argues that his sentence reflected inaccurate factual information and that defense counsel was ineffective in failing to challenge the enhancement at sentencing.[10] Although we do not foreclose the possibility that, in an egregious case, counsel's inadequate performance at sentencing could work a miscarriage of justice, we are confident in concluding that was not the case here. Defense counsel's performance at sentencing was not constitutionally

---

[10] Sotirion also argues, for the first time on appeal, that his waiver should not be enforced because his plea negotiations were "tainted by ineffective assistance of counsel," and therefore enforcement of the resulting plea agreement and waiver would work a miscarriage of justice. See Teeter, 257 F.3d at 25 n.9 (noting that a claim that the plea proceedings were infected by constitutionally deficient assistance of counsel could fall within miscarriage of justice exception). However, Sotirion did not present this argument to the district court; instead, he argued only that counsel provided ineffective assistance by failing to challenge the abuse-of-trust enhancement at sentencing. Thus, we deem the argument waived. United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals.")

deficient.  See United States v. Strickland, 466 U.S. 668, 688 (1984).  Instead, counsel ably represented Sotirion at sentencing, successfully opposed several enhancements sought by the government, and ultimately secured a sentence of 109 months, well below the sentence sought by the government.  Moreover, the guidelines error made by counsel was also made by the government, the court, and the probation officer.

Sotirion likewise was not deprived of due process at sentencing.  The guidelines miscalculation was exactly the kind of routine error contemplated by his appellate waiver, and Sotirion knowingly and voluntarily agreed to that waiver as part of a negotiated plea agreement that accorded significant benefits to him.  In these circumstances, it is not a miscarriage of justice to hold Sotirion to the bargain struck in his plea agreement.

Affirmed.