**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 09-2622

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN A. RUIZ-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lipez, Stahl and Howard,
Circuit Judges.

Maria Soledad Ramirez Becerra, by Appointment of the Court, on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

August 25, 2011

**STAHL**, <u>Circuit Judge</u>.    The defendant, Juan A. Ruiz-González, pled guilty to conspiracy to distribute and/or possess with the intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860.    He was sentenced by the district court to 72 months in prison and now appeals, arguing that the district court erred in considering his prior criminal convictions in reaching the sentencing decision.    Ruiz-González further asserts that the amendment to the sentencing guidelines promulgated in response to the Fair Sentencing Act of 2010 ("FSA") should apply retroactively to him.    For the reason explained below, we dismiss this appeal.

## I.   Facts & Background

On July 28, 2009, Ruiz-González appeared before a magistrate judge to plead guilty, pursuant to a plea agreement, to count one of a multi-count indictment.    After a hearing, the magistrate judge recommended that the district court accept the guilty plea, and the district court subsequently followed that recommendation.

The plea agreement described the crime to which the defendant pled as follows:

> [The defendant] and other persons, did knowingly and intentionally, combine, conspire, and agree . . . to knowingly and intentionally possess with the intent to distribute and/or to distribute controlled substances, to wit: in excess of one (1) kilogram of heroin . . .; and/or in excess of fifty (50) grams of cocaine base . . .; and/or

-2-

> in excess of five (5) kilograms of cocaine . . .; and/or in excess of one hundred (100) kilograms of marijuana . . . within one thousand (1,000) feet of the real property comprising a public or private school, as prohibited by [§§ 841(a)(1), 860]. All in violation of [§ 846].

The agreement specified that, "based on the stipulated and agreed amount of narcotics possessed by the defendant, that is, at least thirty-five (35) grams but less than fifty (50) grams of cocaine base, the penalty for the offense shall be, a term of imprisonment of not less than five (5) years . . . ." Although the agreement set the defendant's total offense level at 26, the parties did not stipulate to a criminal history category ("CHC"). Instead, they agreed that (1) if the defendant was found to be in CHC I, the defendant could request a sentence of 63 months and the government could recommend a sentence of 78 months; (2) if the defendant was found to be in CHC II, the defendant could request a sentence of 70 months and the government could recommend a sentence of 78 months; and (3) if the defendant was found to be in CHC III or higher, both parties agreed to recommend a sentence at the low end of the guideline range. Notably, the agreement included a waiver of appeal that read as follows: "The defendant hereby agrees that if [the district court] accepts this Plea Agreement and sentences him according to its terms, conditions and recommendations, defendant waives and surrenders his right to appeal the judgment and sentence in this case."

The pre-sentence investigation report ("PSR") concluded that the defendant fell into CHC I with a total offense level of 26, and therefore his guideline range was 63 to 78 months. The PSR also listed several incidents that resulted in criminal convictions for the defendant between 1983 and 1993. These included a controlled substance violation and a conviction for possession of a firearm without authorization. Because of their age, however, these convictions did not yield any criminal history points.

On October 30, 2009, the district court convened a sentencing hearing. In keeping with the terms of the plea agreement, the government urged the court to impose a 78-month sentence and the defendant requested a 63-month sentence. The district court acknowledged that the defendant's prior convictions did not yield any criminal history points, but explained that those convictions were nonetheless relevant to the sentencing decision:

> If [the defendant] had been brought to this court . . . [there] would be consecutive violations of drugs, and a weapon, and he would have been considered a felon in possession, if it had been brought to this court, because he has a controlled substance violation of 10/10/87 . . . and he has a weapons violation . . . . also . . . he has a domestic violence case, which was reduced to a simple aggression back in 1993 which this court is also not counting, but I am still concerned because he continues with some proclivity to get himself involved in drug cases.

After finding that the defendant's total offense level was 26 and his CHC was I, the district court imposed a special

assessment of $100.00 and sentenced the defendant to 72 months in prison, followed by 8 years of supervised release.[1]  The district court explained that this sentence was based on the plea agreement and the factors listed in 18 U.S.C. § 3553(a).  The district court again cited the defendant's prior criminal convictions and noted that it was "impressed with the [defendant's] proclivity to drug cases, [his] proclivity to use weapons, which although those violations did not receive any points, it allows the Court to go to the middle range [of the applicable guideline range]."

After the sentence was announced, defense counsel objected to the district court's consideration of the defendant's prior convictions, arguing that "the guidelines say when a crime [was] committed over 15 years [ago], it should not be counted." The district court clarified that it had only considered the controlled substance and weapon convictions, and then explained, "I didn't count [the convictions] for criminal history.  I only counted [them] [in determining] where I'm placing him within [the guideline range] . . . ."  Shortly after the sentencing hearing, the defendant filed a motion for reconsideration and/or correction

---

[1]The transcript of the sentencing hearing quoted the district court as describing the defendant's guideline range as "63 to 68." It is unclear whether this reflects a typographical error or a misstatement by the district court.  Regardless, other portions of the transcript indicate that the district court was well aware that 72 months was in the middle of the applicable guideline range.

of sentence, which the district court denied after holding another hearing.

## II. Discussion

A waiver of appeal will generally be honored if it was knowing and voluntary.  Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010); United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001).  However, "even if the waiver is knowing and voluntary, we retain discretion not to enforce the waiver if it would result in a 'miscarriage of justice.'"  Sotirion, 617 F.3d at 33 (quoting Teeter, 257 F.3d at 25).

The defendant does not dispute that he waived his right to appeal knowingly and voluntarily.  Rather, the defendant contends that enforcing the waiver would constitute a miscarriage of justice.  Specifically, the defendant takes issue with the district court's consideration of his twenty-year-old criminal convictions.  The defendant claims that these convictions "w[ere] not sufficient to conclude that [the defendant] will repeat the conduct in the future" and that the district court's reasoning "resulted in a penalty that was harsher than necessary to achieve the purposes of sentencing."  He argues that the "sentence [was] procedurally incorrect because the [district court's] explanation as to why the recommended sentence of 63 months . . . was not reasonable is not reliable[,]" and the sentence was substantively unreasonable because he deserved a more lenient sentence.

"Th[e] miscarriage of justice exception is meant only for 'egregious cases' and is to be applied 'sparingly and without undue generosity.'" Id. at 36 (citing Teeter, 257 F.3d at 25-26). It "'requires a strong showing of innocence, unfairness, or the like,' and is 'demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error[.]'" Id. (internal citations omitted). In determining whether the miscarriage of justice threshold has been reached, this court considers, among other things, "the clarity of the error, its gravity, its character . . ., the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Teeter, 257 F.3d at 26. For example, we have observed that a miscarriage of justice occurs when a sentencing court considers a constitutionally impermissible factor such as the defendant's race. Id. at 25 n.9. A miscarriage of justice may also occur when the district court plainly errs in sentencing a defendant, such as where the sentence exceeds the maximum penalty permitted by law. Id. at 25 n.10.

In the case at hand, enforcing the waiver would not result in a miscarriage of justice. First, neither the district court's consideration of the defendant's old convictions, nor its explanation that its within-the-guideline sentence was based in part on those convictions, were procedural errors giving rise to a

miscarriage of justice. Not only does the defendant fail to cite any authority supporting the argument that the district court's reasoning was procedurally flawed, but he concedes in his brief that there is "no limitation on the information concerning the background character and conduct of [the defendant] [that may be considered] for the purpose of imposing a sentence." See also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); id. § 3553(a)(1) (instructing court to consider, among other things, "the history and characteristics of the defendant"); U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range . . . the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."). Regardless, the defendant certainly does not explain how any such procedural error was so grave or egregious as to cause a miscarriage of justice, and we cannot see how allowing this sentence to stand would result in a miscarriage of justice.

Second, the 72-month sentence was substantively reasonable. Although a sentence within the applicable guideline range is not presumed reasonable, a defendant challenging the substantive reasonableness of such a sentence bears a heavy burden,

even when the right to appeal has not been waived. See United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir.), cert. denied, 180 L. Ed. 2d 260 (2011). The defendant here has not met that burden. To the extent he argues that the sentence did not appropriately reflect certain mitigating considerations, we disagree. We see nothing about the defendant's circumstances that required the district court to impose a more lenient sentence. Just because the district court did not weigh the mitigating factors as heavily as the defendant would like, it does not mean that the sentence was substantively unreasonable. Cf. id. at 32 ("That the court below chose not to give greater weight to [various mitigating factors] . . . represented a judgment call. Within wide margins, not approached here, such judgment calls are for the sentencing court, not for this court."). Nor do we think the sentence was substantively unreasonable because the district court considered the defendant's prior convictions. Although more than twenty years elapsed between those convictions and the guilty plea in the instant case, it was not unreasonable for the district court to reject a bottom-of-the-range request — in favor of a 72-month, middle-of-the-range sentence — because of the defendant's criminal record and what that record portends for the defendant's ability to avoid criminal activity in the future. See § 3553(a) (instructing sentencing court to consider, among other things, "the history and characteristics of the defendant" and "the need for the sentence

. . . to protect the public from further crimes of the defendant"). In short, the district court advanced "a plausible sentencing rationale" to support "a defensible result," see West v. United States, 631 F.3d 563, 572 (1st Cir. 2011), and the sentence was substantively sound.

Lastly, we turn to the defendant's claim that changes to the sentencing guidelines promulgated pursuant to the FSA should apply retroactively to him. The defendant was sentenced in 2009. The FSA was enacted on August 3, 2010, the emergency guideline amendment promulgated in response to the FSA took effect on November 1, 2010, and the permanent guideline amendment is scheduled to take effect on November 1, 2011. See United States v. Douglas, 644 F.3d 39 (1st Cir. 2011) (setting forth the timeline of the relevant developments). As the defendant acknowledges, absent some directive from Congress or the Sentencing Commission ("Commission"), a sentencing court should generally apply the guidelines that "are in effect on the date the defendant is sentenced." § 3553(a)(4)(A)(ii). We recognize that the Commission recently voted "to give retroactive effect to its proposed permanent amendment to the federal sentencing guidelines that implements the [FSA]." News Release, U.S. Sentencing Comm'n, U.S. Sentencing Comm'n Votes Unanimously to Apply Fair Sentencing Act of 2010 Amendment to the Fed. Sentencing Guidelines Retroactively (June 30, 2011) (available at http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/201106

30_Press_Release.pdf); see also U.S. Sentencing Comm'n Notice of Final Action Regarding Amendment to Policy Statement § 1B1.10, 76 Fed. Reg. 41332 (July 13, 2011); U.S. Sentencing Comm'n Notice of Submission to Congress of Amendments to Sentencing Guidelines and Request for Comment, 76 Fed. Reg. 24960 (May 3, 2011). Unless Congress halts the Commission's plans, retroactivity will accompany the permanent amendment when that amendment takes effect on November 1, 2011. News Release, U.S. Sentencing Comm'n, supra. No matter how this turns out, however, the defendant's request for resentencing under the new guideline regime is premature. Cf. United States v. Williams, 630 F.3d 44, 52-53 (1st Cir. 2010) (concluding that appellant's request for retroactive application of guideline amendment was premature because the Commission had yet to issue the permanent guideline amendment or determine whether that amendment would apply retroactively), cert. denied, 131 S. Ct. 2122 (2011). If and when the permanent amendment becomes retroactive, the defendant "is free to petition for resentencing pursuant to 18 U.S.C. § 3582(c)(2)."[2] Cf. id. at 53.

### III.  Conclusion

For the foregoing reasons, the defendant's appeal is dismissed.

---

[2]We express no opinion about the merits of any such future petition.

-11-