# United States Court of Appeals
## For the First Circuit

No. 15-1981

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL L. VILLODAS-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

Jonathan G. Mermin and Preti, Flaherty, Beliveau & Pachios, LLP, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Francisco A. Besosa-Martínez, Assistant United States Attorney, on brief for appellee.

August 20, 2018

**LIPEZ**, **Circuit Judge**.    Appellant Angel L. Villodas-Rosario appeals his sentence, claiming that it is both procedurally and substantively unreasonable.  He asserts that he may bring these challenges because the waiver-of-appeal provision in his plea agreement should not be enforced under the tripartite framework of United States v. Teeter, 257 F.3d 14 (1st Cir. 2001).  The government urges us to dismiss the appeal based on the plain-error analysis set forth in United States v. Borrero-Acevedo, 533 F.3d 11 (1st Cir. 2008).

These competing arguments mirror the confusion in our precedent as to the proper standard for evaluating the enforceability of an appellate waiver.  Although we explain this confusion below, we ultimately conclude that, even under the more defendant-friendly Teeter approach, Villodas-Rosario's waiver of appeal must be enforced.  Accordingly, we dismiss his appeal.

**I.**

Villodas-Rosario pleaded guilty pursuant to a plea agreement to one count of knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  The plea agreement contained several key provisions.  First, the government agreed to dismiss a related charge for possession of a machine gun, which carried a mandatory minimum of 30 years' imprisonment.  Second, the parties agreed that the guideline sentence recommendation on the remaining charge

was 60 months, which was the statutory mandatory minimum. Third, the agreement permitted the government to recommend a sentence not to exceed 17 years of imprisonment and Villodas-Rosario to advocate for a sentence as low as 8 years of imprisonment. Finally, Villodas-Rosario agreed "to waive and surrender his right to appeal the judgment and sentence in this case if the Court accept[ed] [the agreement] and sentence[d] him according to its terms, conditions, and recommendations."

At the change-of-plea hearing, the district court explained to Villodas-Rosario the rights that defendants waive by pleading guilty. In the context of describing the rights of defendants who are generally in Villodas-Rosario's position, the court stated:

> You should know that sentences imposed in this court for this kind of case can be appealed by both sides. You can appeal. The government can appeal. Both sides can exercise the right to appeal. Sometimes Plea Agreements require that a defendant waive the right to appeal under some circumstances. Do you understand that?

The court did not go beyond this general explanation to describe Villodas-Rosario's specific appellate waiver provision or to inquire into his understanding of the appellate rights he was giving up by accepting the plea agreement. After delivering the explanation, the court accepted Villodas-Rosario's guilty plea.

Subsequent to the plea hearing but prior to sentencing, Villodas-Rosario became concerned about the affidavit of the sole

police officer who conducted surveillance in this case. For example, the officer signed into the precinct to work on only one of the three days on which she supposedly conducted surveillance, and appellant claims that the log book records for the vehicles allegedly used by the officer were unavailable. Nevertheless, the officer's affidavit was used to establish probable cause for the search warrant that led to the discovery of weapons and drugs in Villodas-Rosario's possession. Despite these concerns, Villodas-Rosario never filed a motion challenging the validity of the affidavit. Instead, defense counsel discussed these concerns with the prosecutor out of "courtesy." The prosecutor, in turn, agreed to lower the government's sentencing recommendation to "at least ten (10) years."

At sentencing, the government recommended a sentence of "at least 120 months," well below the maximum term set forth in the plea agreement and consistent with the informally promised recommendation. In fact, both the government and defense counsel confirmed during the sentencing hearing that the 120-month recommendation was "with the understanding that if Your Honor sentences within the range of eight to 17 [years], then the defendant waives his right to appeal" under the plea agreement.

During sentencing, the district court expressly considered relevant factors specified by 18 U.S.C. § 3553(a), including: 1) the drugs, paraphernalia, cash, and multiple

firearms discovered during Villodas-Rosario's arrest; 2) the presence of an automatic firearm; 3) Villodas-Rosario's criminal history; and 4) Villodas-Rosario's history of substance abuse. The district court also noted that the defense essentially "stipulated on [its] own some sort of voluntary variance, if you will, by way of recommendation," since Villodas-Rosario agreed to advocate for at least 96 months' imprisonment despite the minimum guidelines sentence of 60 months. After the allocution, the district court sentenced Villodas-Rosario to 144 months' imprisonment -- a sentence within the plea agreement's appellate waiver range.

On appeal, Villodas-Rosario asks that his sentence be vacated and the case remanded for resentencing. First, Villodas-Rosario contends that his plea agreement's appellate waiver is unenforceable because "the trial court did nothing to ensure that Villodas-Rosario was freely and intelligently waiving his right to appeal his sentence; on the contrary, it assured him that he did have the right to appeal his sentence." Second, if this court finds that the waiver is unenforceable, Villodas-Rosario contends that his sentence was both procedurally unreasonable -- due to the district court's supposed failure to explain the reasons for the variance -- and substantively unreasonable. The government argues that we should enforce the appellate waiver set forth in the plea

agreement and not address the sentencing arguments that Villodas-Rosario raises.

**II.**

Villodas-Rosario and the government, relying on different strands of our court's precedent, disagree about the appropriate standard for determining whether to enforce an appellate waiver. As we explain in Section II.B, we should enforce Villodas-Rosario's waiver regardless of which of the two standards we apply. Nonetheless, the parties' competing arguments highlight a tension in our cases that warrants careful examination. We thus begin our discussion by reviewing the development of our case law on appellate waiver enforcement.

**A. Waiving the Right to Appeal**

In 1999, Rule 11(c)(6) of the Federal Rules of Criminal Procedure was amended to require that, "during a change-of-plea hearing, the presiding judge 'must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal.'" Teeter, 257 F.3d at 22 (quoting Fed. R. Crim. P. 11(c)(6) (1999)).[1] In the

---

[1] In a 2002 amendment, Rule 11 was reorganized and this requirement became what is known today as Rule 11(b)(1)(N), but the substance of the rule remained largely the same. The current text of Rule 11(b)(1)(N) reads, in relevant part: "Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant

explanatory notes for the 1999 amendments, the advisory committee clarified that it was adding the requirement to inquire into waivers of appellate rights only to "reflect the increasing practice of including [appellate waiver] provisions in plea agreements[.]" Fed. R. Crim. P. 11(c)(6), advisory committee's note to 1999 amendments. The committee explicitly disavowed any inference that it thought such appellate waivers were, in fact, enforceable, stating that it "t[ook] no position on the underlying validity of such waivers." Id.

Indeed, at the time Rule 11 was amended to address plea agreement appellate waivers, our court had not yet spoken on their validity. In 2001, Teeter presented us with the opportunity to do so. At the time Teeter was decided, nine other circuits had already addressed the issue, and all nine had upheld the use of such waivers. See 257 F.3d at 23 (compiling cases). In light of this consensus, and "reluctant to brush aside this collective wisdom[,]" we followed our sister circuits in holding that, "under ordinary circumstances," such waivers "are valid in theory." Id. We were concerned, however, about the risks presented by defendants giving up their appellate rights before sentencing. "To ameliorate

---

personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

these risks, we deem[ed] it appropriate that such waivers meet stringent criteria." Id. Hence, we held that appellate waivers are binding so long as: (1) "the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope"; (2) the district court ensures that "the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence" by inquiring "specifically at the change-of-the-plea hearing into any waiver of appellate rights"; and (3) the denial of the right to appeal would not "work a miscarriage of justice." Id. at 24-25; see also United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008).

As to the second prong, Teeter explained that, while an inquiry at the change-of-plea hearing would ensure an intelligent waiver, such an inquiry was not a necessary condition. If the record as a whole revealed that the defendant understood the waiver at the time he entered the plea, an inadequate inquiry would not invalidate the waiver. Teeter, 257 F.3d at 24 (explaining that failure to inquire "may serve to invalidate the waiver, depending upon what the record shows as to the defendant's knowledge (that is, whether the defendant, notwithstanding the absence of a particularized inquiry, understood the full significance of the waiver)").

The Teeter inquiry requirement was explicitly inspired by, but not dependent on, Rule 11. We were "[m]indful that Rule

11[] . . . specifically recognize[d] the importance of the change-of-plea hearing to any waiver of appellate rights," and we noted that "the advisory committee made it pellucid that such an inquiry, properly performed, offer[ed] considerable assurance of the defendant's knowledge and volition." Id. While Teeter favorably referenced the policy motivations of Rule 11(b)(1)(N), other circuits had adopted tests similar to the one in Teeter -- including the requirement that judges inquire into a defendant's waiver of appellate rights at the change-of-plea hearing -- years before the 1999 amendments added such a requirement to the Federal Rules of Criminal Procedure. See, e.g., United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993).

Importantly, the Teeter prong-two inquiry and the Rule 11(b)(1)(N) inquiry -- although accomplished by a single colloquy between court and defendant -- serve two distinct purposes. A defendant invoking Teeter seeks relief from an appellate waiver in order to appeal his conviction, his sentence, or both. The decision whether to enforce an appellate waiver is thus a threshold question. We cannot consider the underlying merits of a defendant's appeal until we decide whether a defendant has validly waived his appellate rights. A defendant alleging Rule 11 violations seeks to vacate the entire plea. The decision whether

to enforce an appellate waiver necessarily precedes the consideration of such claims.[2]

This distinction between a Teeter inquiry and a Rule 11 inquiry is highlighted by the remedy prescribed by Teeter when an appellate waiver is deemed unenforceable. In such cases, we "sever the waiver of appellate rights from the remainder of the plea agreement, allowing the other provisions to remain in force." Teeter, 257 F.3d at 27. After severing, we go on to consider the merits arguments the defendant raises relating to his conviction or sentence. In other words, contravening the requirements of Teeter does not render invalid a defendant's guilty plea. That Teeter treats the enforcement of an appellate waiver as a separate question from the validity of a plea demonstrates that the Rule 11 and Teeter requirements are distinct, each tailored to a different request for relief.

In sum, after Teeter, a First Circuit district court's plea colloquy about an appellate waiver fulfills two independent purposes: it simultaneously satisfies Rule 11's requirement for the valid acceptance of a plea and Teeter's second prong for the enforcement of an appellate waiver. Accordingly, even if Rule

---

[2] In some cases, a defendant may seek to invalidate his plea after he is successfully released from an appellate waiver. A defendant may even seek to invalidate his plea on the basis of a Rule 11(b)(1)(N) error. The issues of appellate waiver enforcement and whether a plea should be invalidated are not mutually exclusive, but will arise sequentially.

11(b)(1)(N) were repealed, Teeter's inquiry requirement would remain unchanged.

That said, since our decision in Teeter, we have failed to continuously stress that Rule 11(b)(1)(N) and the second prong of Teeter, with their shared directive to inquire into the defendant's understanding of an appellate waiver, created two separate, albeit related, obligations.[3]  Indeed, we effectively blended the two areas of law in Borrero-Acevedo, the case on which the government relies to argue that Villodas-Rosario's appeal should be dismissed.

In Borrero-Acevedo, we looked to the Supreme Court's decisions in United States v. Dominguez Benitez, 542 U.S. 74 (2004), and United States v. Vonn, 535 U.S. 55 (2002), which held that a defendant seeking to vacate a conviction based on an unpreserved Rule 11 error "must show a reasonable probability that, but for the error, he would not have entered the plea."  Dominguez Benitez, 542 U.S. at 83; see also Vonn, 535 U.S. at 72-74.  Although the defendant in Borrero-Acevedo challenged the adequacy of the district court's inquiry about his waiver of appeal, it appears that he invoked the deficient inquiry only to challenge the enforcement of his waiver. The defendant sought to invalidate his

---

[3] As previously discussed, the notes to Rule 11 explicitly state that "the Committee takes no position on the underlying validity of such waivers."

guilty plea on other, non-Rule 11(b)(1)(N) grounds. See Borrero-Acevedo, 533 F.3d at 15 (describing the appellant's arguments on the merits as a challenge to "whether his plea was voluntary[,] given that it was part of a package deal and he might have been coerced into pleading guilty by a co-defendant"). Nonetheless, we characterized the flawed plea colloquy in Borrero-Acevedo as an unpreserved Rule 11(b)(1)(N) error and concluded that -- pursuant to Dominguez Benitez and Vonn -- we should apply plain error review in determining whether to enforce the appellate waiver. Hence, we held that a defendant who seeks non-enforcement of an appellate waiver must show that, but for an erroneous plea colloquy pertaining to the waiver, "he would otherwise not have pled guilty." Borrero-Acevedo, 533 F.3d at 18.

In so holding, we may have mistakenly incorporated Rule 11 standards into the second prong of Teeter's analysis for appellate waiver enforcement. The Supreme Court's requirement that a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea," was articulated in the context of "a defendant who seeks reversal of his conviction after a guilty plea." Dominguez Benitez, 542 U.S. at 83. If imported into the realm of appellate waiver enforcement, the Dominguez Benitez plain error standard would be significantly more demanding than the standard set forth in Teeter. Nevertheless, where a defendant such as Villodas-Rosario raises an omission in

the plea colloquy inquiry as a basis for the non-enforcement of an appellate waiver, the conviction itself is not at issue. Arguably, then, Teeter's tripartite test, and not the plain-error standard articulated in Dominguez Benitez and Vonn, should remain the standard used to assess the enforceability of appellate waivers.

In this case, however, -- as explained below -- we need not reconcile any inconsistency between Teeter and Borrero-Acevedo.

**B. Plea Colloquy Error**

Villodas-Rosario avers that his appellate waiver is unenforceable because the district court's plea colloquy failed to ensure that he entered into it knowingly and voluntarily. He argues that the district court not only failed to specifically address the terms of his appellate waiver, but it also affirmatively misled him by stating "you can appeal."

As discussed, Villodas-Rosario relies on Teeter in seeking release from his appellate waiver. See 257 F.3d at 27. Notably, he does not cite Rule 11(b)(1)(N) in his briefs, presumably because he is not seeking to vacate his plea. The government counters that we should enforce the waiver because Villodas-Rosario has not met the standard set by Borrero-Acevedo: a showing that, but for the district court's deficient explanation, he would not have entered the plea. See 533 F.3d at 18. Notwithstanding this important debate concerning the correct

- 13 -

analysis, we do not resolve this dispute because Villodas-Rosario's effort to escape the appellate waiver is unavailing even under the more defendant-friendly Teeter test.

The first prong of the tripartite Teeter test -- the clarity of the written waiver provision -- is not contested. The plea agreement clearly stated that Villodas-Rosario relinquished the right to appeal if he was sentenced within the agreed-upon range. It is also beyond debate that the district court failed to satisfy the second prong's instruction to "inquire specifically at the change-of-the-plea hearing into any waiver of appellate rights." Teeter, 257 F.3d at 24. The court's general statements about appellate waivers were insufficient to ensure Villodas-Rosario's understanding of his specific waiver. However, an inadequate colloquy does not end our evaluation of the second prong. Instead, enforcement of the waiver ultimately depends "upon what the record shows as to the defendant['s] knowledge (that is, whether the defendant, notwithstanding the absence of a particularized inquiry, understood the full significance of the waiver)." Id.

Villodas-Rosario suggests that the district court's statement "you can appeal" necessarily prevents a finding that he knew otherwise. To the contrary, we previously have observed that, "[w]hile broad assurances to a defendant who has waived her appellate rights (e.g., 'you have a right to appeal your sentence')

are to be avoided[,] . . . they do not effect a per se nullification of a plea-agreement waiver of appellate rights." Teeter, 257 F.3d at 25.

Nowhere does Villodas-Rosario assert that he, in fact, unknowingly waived his appellate rights. He argues only that the district court's colloquy was erroneous and misleading. Indeed, at Villodas-Rosario's sentencing, his counsel acknowledged that his plea agreement contained a provision that waived his right to appeal his sentence if he was sentenced "within the range of eight to 17" years. Neither Villodas-Rosario nor his counsel indicated any objection to, or concern about, the terms of the waiver after they were openly discussed.[4] Although the relevant knowledge under Teeter is what Villodas-Rosario knew about the appellate waiver at the time the plea was accepted, we look to the whole record to determine what he understood about the waiver when he entered the plea. See 257 F.3d at 24; see also Borrero-Acevedo, 533 F.3d at 16.

Our review persuades us that Villodas-Rosario understood at the time he entered his plea that he agreed to forego the right to appeal if his sentence fell within the provided-for range. The record does not indicate when he would have allegedly learned of

_____

[4] Although the district court reiterated at the end of sentencing that Villodas-Rosario could appeal, Villodas-Rosario does not contend that this statement had any effect on whether his waiver was knowing and voluntary.

the specifics of his appellate waiver after entry of the plea but before sentencing. Yet Villodas-Rosario's counsel at the sentencing hearing -- without prompting by the court and in his client's presence -- reiterated the defendant's agreement to the specific appellate waiver provision. Even at that point, when an opportunity remained to object before his sentence was imposed, Villodas-Rosario expressed no concern about the waiver. Given the clarity of the written provision, the lack of objection at any time to the meaning of the appellate waiver, and defense counsel's representations to the court, we think it is a fair conclusion that Villodas-Rosario understood the terms of the appellate waiver when he entered his plea. His waiver was knowing and voluntary as required by the first and second Teeter prongs.

## C. Miscarriage of Justice

The remaining question under Teeter -- the third prong -- is whether "denying a right to appeal would work a miscarriage of justice." 257 F.3d at 25. If such a miscarriage of justice would occur, we, in our discretion, "may refuse to honor the waiver." Id.; see also Sotirion v. United States, 617 F.3d 27, 37 (1st Cir. 2010) (holding that, even under the Borrero-Acevedo analysis, a defendant "must nevertheless be afforded the opportunity to demonstrate that enforcement of the waiver would

- 16 -

work a miscarriage of justice").[5]  We permit appellants to make miscarriage of justice challenges because "appellate waivers are made before any manifestation of sentencing error emerges," and so "appellate courts must remain free to grant relief from them." Sotirion, 617 F.3d at 36 (quoting Teeter, 257 F.3d at 25) (internal quotation marks omitted).  Although appellate waivers bring finality to proceedings, they "are not intended to leave defendants 'totally exposed to future vagaries (however harsh, unfair, or unforeseeable).'"  Id. (quoting Teeter, 257 F.3d at 25).  That said, the miscarriage of justice exception is designed "only for 'egregious cases' and is to be applied 'sparingly and without undue generosity.'"  Id. (quoting Teeter, 257 F.3d at 25, 26).  The standard is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error."  Teeter, 257 F.3d at 26.

Villodas-Rosario argues that "it would be a miscarriage of justice for this Court to deny him the right to appeal his

_____

[5] Borrero-Acevedo questioned, without deciding, whether the "miscarriage of justice" prong of Teeter survived its characterization of the proper test for enforcement of appellate waivers.  See Borrero-Acevedo, 533 F.3d at 19 ("[T]he question after Vonn and Dominguez Benitez is whether there is any discretionary power left in this court to decline to enforce a waiver of appeal clause where we conclude that enforcing the waiver would be a miscarriage of justice.").  In a subsequent case, Sotirion, we held that the miscarriage of justice analysis articulated in Teeter survived even under the Borrero-Acevedo standard.  See Sotirion, 617 F.3d at 37.

sentence after the district court expressly advised him that he did have that right." In other words, Villodas-Rosario's miscarriage-of-justice claim attempts to reargue the plea colloquy error that we have already addressed. But the third prong of Teeter, unlike the first two prongs, is not about the knowing and voluntary nature of the waiver. See Sotirion, 617 F.3d at 37. Instead, miscarriage-of-justice analysis provides the court with an opportunity to release a defendant from an appellate waiver when errors unrelated to the validity of the waiver are so egregious that barring the defendant's ability to appeal would work a "miscarriage of justice." As we have said, there are "dangers posed by a prospective waiver of the right to challenge errors that have not yet occurred." Id. (emphasis added). We gave examples of such errors in Teeter: the use of "constitutionally impermissible factors (say, race or ethnicity)" at sentencing, the imposition of a "sentence exceeding the maximum penalty permitted by law," or the imposition of a sentence that "violates a material term of the plea agreement[.]" 257 F.3d at 25 nn.9 & 10 (internal citations omitted).

The errors claimed by Villodas-Rosario in the merits portion of his briefing -- the sentence was both procedurally and substantively unreasonable -- do not begin to suggest a viable miscarriage-of-justice claim. Procedurally, Villodas-Rosario's assertion that the district court failed to justify its imposition

of a sentencing variance is no more than a "garden-variety" claim specifically barred by an appellate waiver.  See Sotirion, 617 F.3d at 38 (quoting Teeter, 257 F.3d at 26).  So too with Villodas-Rosario's substantive challenge to the district court's discretionary weighing of appropriate sentencing factors.  See United States v. Madera-Ortiz, 637 F.3d 26, 31 (1st Cir. 2011).  Thus, we enforce Villodas-Rosario's appellate waiver, and we decline to reach the merits of his challenge to his sentence.

Appeal Dismissed.