# United States Court of Appeals
## For the First Circuit

No. 23-1938

UNITED STATES OF AMERICA,

Appellee,

v.

KELECHI COLLINS UMEH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Montecalvo, Howard, and Aframe,
Circuit Judges.

Donald C. Lockhart, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

Houston Goddard, with whom Goddard Pope PLLC was on brief, for appellant.

April 2, 2025

HOWARD, **Circuit Judge**. Principally arguing that errors by the district court during the change-of-plea colloquy rendered his plea unknowing and involuntary, Kelechi Collins Umeh challenges the validity of his conviction of one count of conspiracy to commit bank fraud. Unconvinced that the district court's alleged errors ultimately affected Umeh's decision to plead guilty, we affirm.

## I.

As this appeal presents a challenge to a guilty plea, "we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report . . . and the record of the disposition hearing." United States v. Cahill, 85 F.4th 616, 619 (1st Cir. 2023) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)). Neither the government nor Umeh objected to the presentence report.

## A.

From at least June 2018 through January 2020, Umeh assisted in an organized effort to collectively defraud more than 30 victims of at least $1.3 million through a variety of predominantly online scams. These scams took three forms: romance scams, in which participants in the conspiracy used fictitious personas on dating and social websites to manipulate victims into transferring funds under false pretenses; advance fee scams, in which participants tricked victims into transferring funds based

on false promises to convey something of value in return; and business email compromise scams, in which participants sent communications to victims that masqueraded as legitimate requests to transfer funds from familiar entities. The defrauded victims included (often elderly) individuals, businesses, and government agencies.

Umeh took a back-end role in this multifaceted scam enterprise. A Nigerian national lawfully admitted to the United States, Umeh used fake Ghanian, Liberian, and South African passports to open at least 17 bank accounts under false identities. After Umeh opened an account, fraudsters located in Africa would manipulate victims into transferring money into that account using one of the scams above, and Umeh would withdraw the deposited proceeds. In total, the government attributed nearly $550,000 of defrauded funds to accounts that Umeh controlled.

After his arrest in July 2022 on a complaint charging conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, Umeh was brought before a magistrate judge for his initial appearance. Pertinent to this appeal, the judge advised Umeh of the following:

> You . . . have the right to be represented by an attorney at any critical stage of the proceedings before you. You may consult with an attorney before you are asked any questions, and you may have an attorney present while you are questioned. If you

> cannot afford an attorney, counsel will be
> appointed for you without charge.

Umeh requested appointed counsel. The court also directed government counsel to "state the maximum potential penalties" for Umeh's charge, and government counsel listed the maximum fine and periods of incarceration and supervised release, noting as well the restitution, forfeiture, and special assessment to which he was subject. Umeh was ultimately released pending trial.

Several months later, with his attorney's assistance, Umeh entered into a plea agreement with the government in which he agreed to "waive Indictment and plead guilty to Count One of the Information" and admit his guilt of that count. In several provisions, the plea agreement detailed the consequences of pleading guilty and the rights that Umeh would waive by doing so. First, the plea agreement advised Umeh that he "face[d] the following maximum penalties: incarceration for 30 years; supervised release for 5 years; a fine of $1,000,000 or twice the gross gain or loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information." Second, the plea agreement attested that Umeh understood the risk of a guilty plea to a non-citizen's immigration status and stated that he "agree[d] to plead guilty regardless of any potential immigration consequences," including deportation. Third, it stated that Umeh's conduct triggered an

offense level of 24 under the U.S. Sentencing Guidelines and delineated the adjustment calculations that produced that offense level. The agreement went on to state that Umeh "understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes" and that under certain circumstances, "the U.S. Attorney reserves the right to seek an upward departure under the Guidelines." Fourth, the plea agreement covered the government's recommended sentence of "incarceration at the low end of the Guidelines sentencing range as calculated," a fine "within the Guidelines sentencing range as calculated by the parties, unless the Court finds" that Umeh is unable to pay one, "24 months of supervised release," "a mandatory special assessment of $100," restitution of $878,652.29, and forfeiture of all assets traceable to the offense, including four identified bank accounts and $512,502.20 in currency. Finally, the plea agreement included an appellate waiver.

## B.

Because Umeh's challenge centers on the district court's change-of-plea colloquy, we recount in significant detail the change-of-plea hearing -- a hearing which, both parties agree,

deviated from the conventional script for change-of-plea hearings that follows from Federal Rule of Criminal Procedure 11.

The district court began the hearing by explaining its purpose, noting in part that the court "[had] been given what appears to be a plea agreement" but advising Umeh that he "[would not] have to go through with that" and that "if [he] decide[d] not to plead guilty," the court would simply "get [his] case ready for trial." After further previewing the proceeding, the court inquired about Umeh's age, education, and substance use, and it had Umeh identify the crime for which he intended to plead guilty. The court then explained that the government would have to prove each element of the charged offense, twice confirming Umeh's understanding of those elements.

Next, the court described its seemingly unique approach to sentencing, stating: "[I]n this session of the court, if there are any potential enhancements, that is aspects of this that could make the sentence harsher, I make the government prove those things to the jury on evidence beyond a reasonable doubt." The court then directed government counsel to describe the enhancements that applied to Umeh's case and, after she did so, stated: "Now she's named those elements. She only has to -- to find you guilty, the jury only has to find those first three that I've talked about, but I will make her prove each of these other things before I count them against you when it comes time to sentence you. Do you

understand that in this session of the court I will make them prove this to the jury?" Umeh answered that he did.

Next, the court stated to Umeh, "You have the right to a fair and impartial trial before a jury," before pivoting to a lengthy discussion of the information filed in Umeh's case and how it compared to an indictment. The court then found, following several additional inquiries of Umeh about his understanding of his right to be indicted, that Umeh "knowingly, intelligently, and voluntarily, exercise[d] his right to waive indictment."

The court next gave the following explanation of what would happen if Umeh proceeded to trial:

> At the trial you would get some say -- a jury will decide, not me, but a jury will decide whether the government has proved the case beyond a reasonable doubt. At that trial -- and they must all agree unanimously before you could be found guilty. At that trial you have the right to be right here in the courtroom, to view the evidence as it's being received -- we call it the 'right of confrontation,' but more important than just being here and watching the evidence, your lawyer has a right to ask the witnesses questions, cross-examine them, call witnesses on your behalf, you can testify on your own behalf. And yet another right is you don't have to do any of that, the government made this charge, the government has to prove this case beyond a reasonable doubt. You don't have anything to explain, you start the trial innocent. And I will say that to the jury, and you are an innocent man going into the trial, and we'll have to see what the evidence shows. And you are under no obligation to say anything or explain anything. And I'm not giving you anything when I tell you these

- 7 -

> things, these are yours, they're your rights
> under the Constitution. Do you understand you
> have these rights?

Umeh answered affirmatively. The court sought additional confirmation that Umeh nonetheless wanted to plead guilty, knowing that he would not proceed to trial and that after doing so "all that [would] remain[] is what sentence [the court would] impose upon [him]." Umeh said that he did.

Turning to the sentencing guidelines, the court next explained their advisory nature while adding its own gloss that, "as I view the Constitution, I don't think I can go any higher" than "the top of the sentencing guideline without regard to [any downward adjustment for acceptance of responsibility]." The court directed government counsel to state the maximum guideline calculation ("97 months"), followed by the guideline range after an adjustment for acceptance of responsibility ("57 to 71 months"). The court confirmed that Umeh understood each.

Finally, the court verified that Umeh recognized, read, understood, reviewed with his lawyer, and signed his plea agreement. After breaking down each component of the plea agreement's sentencing recommendation, the court confirmed that Umeh understood that the court could nonetheless differ from that recommendation in imposing its sentence. The court then made several more inquiries of Umeh, asking if, "other than this plea agreement, this deal that you have with the government, do you

have any promise, any agreement about which I don't know, some other side agreement?"; whether "anyone [has] threaten[ed] you with anything to get you to plead guilty?"; and "are you covering up for someone else by pleading guilty yourself?" To all three questions, Umeh answered, "No, your Honor." The court also asked whether Umeh understood the following: "If you are not a citizen of the United States, conviction of this crime may have the consequence of your being deported from the United States, denied naturalization under the laws of the United States, denied admission to the United States." Umeh answered that he did.

After directing government counsel to preview the government's case case against Umeh in depth, the district court sought confirmation that Umeh heard and understood "what government counsel had to say" and that he nonetheless was "prepared to plead guilty to this one-count information charging conspiracy to commit bank fraud . . . ." Umeh answered affirmatively, and the court stated, "I do find that Mr. Kelechi Collins knowingly, intelligently, and voluntarily exercises his right to plead guilty to this one-count information."

The hearing ended with a colloquy about the filing of the information. The court confirmed that Umeh had read the one-count information, reviewed it with his attorney, and understood it. The court then asked whether Umeh "want[ed the clerk] to read it now again in open court." Umeh answered that he did not, and

the court directed that "the Clerk may accept the plea." The clerk proceeded to ask Umeh how he pleaded to the count, and Umeh answered "[g]uilty."

At his subsequent sentencing hearing, Umeh was sentenced to a below-guidelines sentence of incarceration for 40 months, along with 24 months of supervised release, restitution of $878,652.29, forfeiture, and a $100 special assessment. He appeals.

## II.

Umeh's challenge raises numerous procedural shortcomings throughout the district court's change-of-plea colloquy, which Umeh asserts are cumulatively, and, as to some, individually, so serious as to render his plea unknowing and involuntary and therefore constitutionally defective under the Sixth Amendment.

As a threshold matter, however, the government contends that the appellate waiver in Umeh's plea agreement forecloses his appeal altogether. For his part, Umeh claims that the district court's failure to even mention the appellate waiver at his change-of-plea hearing renders it unenforceable, an error that he asserts was compounded by the court also advising him at sentencing that he had "the right to appeal from any findings or rulings that the Court makes against [him]." This disagreement surfaces what we have previously described as a "tension" between our analysis of appellate waiver enforceability in United States v. Teeter, 257

F.3d 14, 24 (1st Cir. 2001) (holding that a district court's failure to inquire as to an appellate waiver is error and prescribing a tripartite analysis to determine whether to invalidate the waiver), and our holding in United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008) (stating that an unpreserved claim of error regarding a change-of-plea colloquy about an appellate waiver is subject to plain-error review). See United States v. Villodas-Rosario, 901 F.3d 10, 14 (1st Cir. 2018) (describing "a tension in our cases" regarding "the appropriate standard for determining whether to enforce an appellate waiver"). This appeal does not require us to resolve that tension, however, because whether or not his appellate waiver is unenforceable, Umeh's challenge founders on its merits.

**A.**

Umeh's chief argument focuses on the district court's references to his right to a jury trial, which he contends were so unclear that they fell short of satisfying the obligation to provide notice of that right as required by Rule 11, see Fed. R. Crim. P. 11(b)(1)(C). Building from this premise, Umeh argues that this posited violation amounted to a structural error that requires vacatur of his guilty plea. He is wrong.

We assume for the sake of argument that the district court's colloquy failed to satisfy Rule 11(b)(1)(C) and therefore constituted error. Even so, only a select few errors belong to

- 11 -

the "highly exceptional category of structural errors," United States v. Davila, 569 U.S. 597, 599 (2013), exempt from the "general rule that a constitutional error does not automatically require reversal of a conviction," Arizona v. Fulminante, 499 U.S. 279, 306 (1991) (citing Chapman v. California, 386 U.S. 18 (1967)). A structural error "'transcends the criminal process[]' by depriving a defendant of those 'basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" United States v. Padilla, 415 F.3d 211, 219 (1st Cir. 2005) (second alteration in original) (citation omitted) (first quoting Fulminante, 499 U.S. at 309; and then quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)). The "very limited class" of errors that meet these criteria, Johnson v. United States, 520 U.S. 461, 468 (1997), include the denial of counsel, denial of self-representation, denial of a public trial, and a defective reasonable-doubt instruction -- errors so intractably disruptive to the defendant's constitutional trial rights that they "affect the 'entire conduct of the [proceeding] from beginning to end,'" Greer v. United States, 593 U.S. 503, 513 (2021) (alteration in original) (quoting Fulminante, 499 U.S. at 309).

We have not specifically addressed whether a district court's omission of the jury-trial warning prescribed by Rule

11(b)(1)(C) from a change-of-plea colloquy constitutes structural error. However, the Supreme Court made clear in Greer that the mere "omission of a required warning from a Rule 11 plea colloquy . . . [is] not structural because [it does] not 'necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" 593 U.S. at 513 (quoting Neder v. United States, 527 U.S. 1, 9 (1999)); see also United States v. Dominguez Benitez, 542 U.S. 74, 81 n.6 (2004) ("The omission of a single Rule 11 warning without more is not colorably structural."). It accordingly follows that failure to give the jury-trial warning, just like any other Rule 11 warning, is not structural error.[1]

Umeh maintains that a district court's failure to issue this warning is meaningfully more serious than other Rule 11 errors because the right to a jury trial is a fundamental right, and he argues that failing to give a defendant this warning is tantamount to denying a defendant that right. We disagree, finding no reason to single this warning out for special treatment. Many of the warnings prescribed by Rule 11(b) concern the fundamental rights

---

[1] We note that, contrary to Umeh's contention, this is not a case where "the record of [the] criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, [requiring that] the conviction must be reversed." Dominguez Benitez, 542 U.S. at 84 n.10. As we explain below, the record supplies ample support for the conclusion that Umeh knew of his right to a jury trial notwithstanding the district court's imprecise explanation of it.

- 13 -

of those accused, including their right to plead not guilty (described in Rule 11(b)(1)(B)), right to counsel (described in Rule 11(b)(1)(D)), and rights to confront witnesses and against self-incrimination (described in Rule 11(b)(1)(E)). See U.S. Const. amends. V, VI; see also Withrow v. Williams, 507 U.S. 680, 691 (1993) (noting that the right against self-incrimination is a fundamental right); Gideon v. Wainwright, 372 U.S. 335, 342 (1963) (holding the same of the right to counsel); Pointer v. Texas, 380 U.S. 400, 403 (1965) (holding the same of the right to confrontation). Indeed, insufficient discussion of fundamental rights is common grist for plain-error review of alleged Rule 11 errors. See, e.g., United States v. Pattee, 820 F.3d 496, 506 (2d Cir. 2016) (applying plain-error review to Rule 11(b)(1)(B) error); United States v. Rodriguez, 751 F.3d 1244, 1252, 1254 (11th Cir. 2014) (same, for Rule 11(b)(1)(D) error); United States v. Griffin, 521 F.3d 727, 730 (7th Cir. 2008) (same, for Rule 11(b)(1)(E) error). We therefore see no basis to conclude that, when the Supreme Court held that omitted Rule 11 warnings were non-structural errors in both Dominguez Benitez and Greer, it meant to impliedly carve out an exception for one or more of those warnings. 542 U.S. at 81 n.6; 593 U.S. at 513.

To be clear, we do not hold that Umeh is wrong in asserting that denying a defendant the right to a jury trial constitutes structural error. Rather, we need not reach that

question at all, as Umeh incorrectly conflates his fundamental jury-trial right with his procedural right to the warning prescribed by Rule 11(b)(1)(C). These two guarantees, while related, are not one and the same, nor does a defect in the latter necessarily produce a violation of the former. While denying a defendant a jury trial incontrovertibly denies a right promised by the Sixth Amendment, failing to remind a defendant of that right at the change-of-plea hearing represents a procedural shortcoming that, depending on the circumstances, does no harm. This is especially the case when the change-of-plea colloquy is not the first time that the defendant would learn of that right. Of these two distinct errors -- the deprivation of a fundamental right and the deprivation of a reminder about the existence of that fundamental right -- only the latter is at issue here. Accordingly, we need not address whether denial of the right to a jury trial itself would be structural error to find that, like other omitted Rule 11 warnings, a district court's failure to mention the right to a jury trial in the change-of-plea colloquy does not, by itself, constitute structural error.

**B.**

Umeh's second argument directs our attention to an abundance of Rule 11 errors that he alleges that the district court made during the change-of-plea colloquy. Umeh asserts that, had the colloquy complied with Rule 11, it is reasonably probable that

he would have proceeded to trial. We find no support for this contention in the record. Rather, in large part, the plea agreement and Umeh's initial appearance before the magistrate judge thoroughly explained to Umeh many of his rights, negating any argument that Umeh was left unaware of those rights by the time of his change-of-plea hearing.

Umeh enumerates a plethora of alleged defects in the district court's change-of-plea colloquy, contending that he was not advised of: (1) his right to counsel at all stages of the proceedings against him under Rule 11(b)(1)(D); (2) the maximum possible penalty for his conviction under Rule 11(b)(1)(H); (3) his appellate waiver under Rule 11(b)(1)(N); (4) his inability to withdraw his guilty plea if the court deviated from his plea agreement's sentencing recommendation under Rule 11(c)(3)(B); (5) the court's obligation to calculate and consider the guideline range for his conviction under the sentencing guidelines, along with departures and other sentencing factors pursuant to 18 U.S.C. § 3553(a) under Rule 11(b)(1)(M); (6) the applicable forfeiture under Rule 11(b)(1)(J); (7) the court's authority to order restitution under Rule 11(b)(1)(K); (8) the court's obligation to impose a special assessment under Rule 11(b)(1)(L); (9) his right to a jury trial under Rule 11(b)(1)(C); (10) his right to present evidence and compel the attendance of witnesses under Rule 11(b)(1)(E); and (11) his waiver of that right under Rule

11(b)(1)(F).  Umeh also submits that the court failed to (12) ensure he had a copy of the criminal information at his arraignment under Rule 10(a)(1); (13) determine that his plea was knowing and voluntary and not the result of force, threats, or promises under Rule 11(b)(2); and (14) formally accept his plea as referenced by Rule 11(b)(2).

Given our resolution of Umeh's claim of structural error, and because Umeh did not raise his objections to the district court at his change-of-plea hearing, we review them for plain error.  See United States v. Burghardt, 939 F.3d 397, 402-03 (1st Cir. 2019).  "The defendant's burden under the plain error standard is a heavy one," requiring that the defendant show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . and which (4) seriously impugns the fairness, integrity or public reputation of the proceeding." Cahill, 85 F.4th at 621 (quoting United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002); and then quoting United States v. Correa-Osorio, 784 F.3d 11, 17-18 (1st Cir. 2015)).  The third prong requires the defendant to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Padilla, 415 F.3d at 221 (quoting Dominguez Benitez, 542 U.S. at 82) (cleaned up).  "[I]n assessing the effect of a Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone." See Dominguez Benitez,

- 17 -

542 U.S. at 80 (citing United States v. Vonn, 535 U.S. 55, 74-75 (2002)).    A defendant's challenge cannot prevail without satisfying all four prongs, which we may address in any order. See United States v. Langston, 110 F.4th 408, 419 (1st Cir. 2024).

**1.**

The lion's share of Umeh's objections fail on the third prong of plain-error review, as the substance of the first eight Rule 11 warnings to which he directs us were covered in his plea agreement, his initial appearance, or both.    The cases make clear that a defendant cannot show a reasonable probability that he would have proceeded to trial based on omitted Rule 11 warnings when the defendant's plea agreement contained substantively identical information and the defendant confirmed his understanding of the agreement during the change-of-plea colloquy.    See United States v. Sevilla-Oyola, 770 F.3d 1, 14 n.24 (1st Cir. 2014).    Likewise, defendants may "be presumed to recall information provided to them prior to the plea proceeding," such as at their initial appearance. Vonn, 535 U.S. at 75.

Here, Umeh was unequivocally advised at his initial appearance of his right to counsel "at any critical stage of the proceedings before" him.    He then confirmed that he understood that right, both by saying so and requesting that counsel be appointed to represent him, exercising the right of which he had

been informed.[2]  Similarly, Umeh affirmed at his change-of-plea hearing that he knowingly and voluntarily entered into the plea agreement, and that agreement clearly references in plain language the substance of the next seven Rule 11 warnings above.  In relevant part, the plea agreement discussed his appellate waiver and inability to withdraw his guilty plea based on the court's sentence, explicitly mentioned that "the Court calculates the Guidelines" and could apply "an upward departure under the Guidelines" under certain circumstances, extensively detailed the applicable forfeiture, identified the maximum penalties, and twice referenced both restitution and the "mandatory" special assessment as part of his maximum and recommended sentences.  The record thus establishes that Umeh knew of these particulars at the time he entered his plea, even if the court failed to adequately explain some of them at his change-of-plea hearing.  See Sevilla-Oyola, 770 F.3d at 14 n.24.

In the same vein, the plea agreement references the information in stating Umeh's intention to "plead guilty to Count One of the Information," thus indicating that Umeh knew the information's substance would apply to the plea agreement when he

---

[2] Umeh was also advised of the maximum penalties applicable to his conviction at his initial appearance, although the magistrate judge did not solicit contemporaneous confirmation from Umeh that he understood that information.

entered into it.[3]    Even if Umeh did not see the information

beforehand, as he now implies, the court confirmed during the

arraignment phase of his change-of-plea hearing that Umeh had read

and discussed the document with his attorney, and the court offered

to read it to him then before he entered into his plea.    If the

contents of the information would have affected Umeh's decision to

plead guilty, we cannot see why Umeh declined that offer from the

court.    Rather, the record evidence is that Umeh was aware of the

information's charge, and a last-minute refresher of its contents

would have had no effect on his plea.

Returning to the issue of notice of Umeh's right to a

jury trial, now on plain-error review, this claim also fails on

the third prong.    The district court mentioned his jury-trial right

-- albeit opaquely -- at least three times at his change-of-plea

hearing, stating that "to find you guilty, the jury only has to

find those first three [elements of conspiracy to commit bank

fraud] that I've talked about," that "[y]ou have the right to a

fair and impartial trial before a jury" and that "[a]t the

trial . . . a jury will decide, not me, but a jury will decide

whether the government has proved the case beyond a reasonable

---

[3] We review unpreserved claims of Rule 10(a) error under the same plain-error standard as Rule 11 errors. See Fed. R. Crim. P. 52(b); see also United States v. Lalonde, 509 F.3d 750, 757 (6th Cir. 2007) (applying plain-error review to unpreserved claim of error under Rule 10(a)(2)).

doubt. At that trial -- and they must all agree unanimously before you could be found guilty." The court even sought to confirm that Umeh understood its third attempt to convey this warning, eventually asking, "Do you understand that you have these rights?," to which Umeh answered that he did. Especially in light of Umeh's concession that in both 2006 and 2022 -- the latter less than three months before his arrest in this case -- he elected to proceed to jury trials on other charges in state court, the district court's several mentions of the jury-trial right sufficiently alerted Umeh that a similar right was available to him in federal court.

Umeh responds by arguing that we may not assume from a defendant's criminal record in state court that he understands the right to a jury trial to apply with equal force in both state and federal courts. In one sense, this is true; a federal court is not relieved of the obligation of complying with Rule 11 based on a presumption that a defendant already has knowledge of the relevant rights from trial experiences in state court. But whether there has been a breach of that obligation only goes to the first prong of plain-error review. Under the third prong, Umeh must show that he would have upended his plans to enter a guilty plea at his change-of-plea hearing once the court expressly advised him of his jury-trial right, and given Umeh's experiences in state court <u>combined with</u> the district court's repeated discussion of

that right, there is no basis on which to conclude that he would have done so.[4]

The context of Umeh's guilty plea only bolsters this conclusion.  In United States v. Hernández-Maldonado, we held that a plea agreement's inclusion of a Rule 11 warning omitted from a change-of-plea colloquy "tends to show that the Rule 11 error made no difference to the outcome . . . ."  793 F.3d 223, 226 (1st Cir. 2015) (quoting Dominguez Benitez, 542 U.S. at 85).  In particular, we noted that three aspects of the plea made clear that the defendant "ha[d] not come close to meeting his burden" on the third prong of plain-error review: that the defendant was "no neophyte to the criminal justice system," had "voluntarily entered into a plea agreement," and had obtained a favorable sentencing recommendation from the government pursuant thereto. Id.  In these respects, Umeh's case is nearly indistinguishable from Hernández-Maldonado.  Here, Umeh is a veteran of the criminal justice system, having been to trial twice before and convicted of criminal charges on at least five separate occasions.  And just like the defendant in Hernández-Maldonado, Umeh voluntarily entered into his plea

_____

[4] The district court's assertions of law relating to the scope of his right to a jury trial -- that a jury would also find whether the government proved the application of any sentencing enhancements beyond a reasonable doubt -- do not alter our conclusion.  While these statements may have misstated the law governing proof of sentencing enhancements, Umeh has not developed any argument that these errors materially affected his decision to plead guilty.

agreement and received a bottom-of-guidelines sentencing recommendation from the government as a result. See id. We accordingly see no reason to reach a different result on this record. With respect to the first nine of his objections, we conclude that Umeh has not shown "a reasonable probability that he would not have pled guilty if the missing warning[s] had been administered." Id. Therefore, Umeh's substantial rights were unaffected by any such errors by the court. Id.

For his part, Umeh relies entirely on his own admitted misunderstanding of the combined implications of his conviction and sentence on his immigration status in his attempt to meet his burden on the third prong of plain-error review. Umeh now represents that he pled guilty with an eye towards seeking a sentence of supervised release, supposedly under the mistaken belief that he could remain in the United States during such a sentence. As Umeh acknowledges that he later learned, any such strategy was rooted in a mistake of law, as Umeh's aggravated felony conviction would trigger his deportation as a noncitizen. See 8 U.S.C. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii). Even assuming this purported mistake was genuine, Umeh advances no argument that there is "any causal link between his confusion and the particular Rule 11 violation[s] on which he now seeks relief." Dominguez Benitez, 542 U.S. at 85. Indeed, no Rule 11 warning of which Umeh complains, even flawlessly delivered by the court, would

- 23 -

have clarified for him the inevitability of deportation resulting from his plea.  Umeh even concedes that the one Rule 11 warning that could have set him straight -- the warning of immigration consequences of a conviction for non-citizens required by Rule 11(b)(1)(O) -- was properly delivered by the district court.[5]

**2.**

The remaining four Rule 11 errors Umeh raises are readily dispatched on the second prong of plain-error review, which requires that an asserted error have been "clear or obvious" -- that is, "'indisputable' in light of controlling law."  United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021) (quoting United States v. Jones, 748 F.3d 64, 69-70 (1st Cir. 2014)).  Here, the district court unequivocally stated while explaining the mechanics of trial that "your lawyer has the right to ask the witnesses questions, to cross-examine them, call witnesses on your behalf" and later confirmed that Umeh's understanding that "[i]f you plead guilty, you give them all away."  Given these statements by the

---

[5] Umeh urges us to analyze these plain-error arguments under the doctrine of cumulative error.  However, even if treated as a group, Umeh's claims of error would still have to satisfy all four prongs of plain-error review to vacate his conviction. Cf. United States v. Pereira, 848 F.3d 17, 30 (1st Cir. 2017) (applying harmless-error standard to cumulative-error analysis of preserved errors).  The result thus would be the same, as his argument's shortcomings on the third prong -- his prior knowledge of the omitted warnings' substance and the irrelevance of their omission to the reasons for his mistaken plea -- are common to nearly all the errors he asserts.  They would thus produce the same result even when analyzed collectively.

court, we cannot conclude that it "indisputabl[y]" failed to advise Umeh of his right to present evidence and compel attendance of witnesses and his waiver of that right.  While the court's phrasing of these rights and its inquiry into Umeh's understanding of them may not have been models of clarity given its consolidation of that inquiry with its inquiry into his understanding of other rights, a district court's failure to take the clearest path possible is not so "obvious" an error as to satisfy the second prong of plain-error review.  See Sotirion v. United States, 617 F.3d 27, 34 (1st Cir. 2010) (finding magistrate judge's error in inquiring into a defendant's understanding of rights was not "obvious" even though the inquiry was "not as thorough or precise as it could have been").

The same is true as to Umeh's final pair of claimed errors: that the district court failed to determine that his plea was knowing and voluntary and not the result of force, threats, or promises pursuant to Rule 11(b)(2); and that the court failed to accept his plea.  As with his right to present evidence and compel witnesses above, the court conveyed the core meaning of its inquiry into others' influence on Umeh's plea, asking him about "any promise, any . . . other side agreement," whether "anyone threaten[ed] [Umeh] with anything to get [him] to plead guilty," and whether he was "covering up for someone else."  These inquiries, as well as the court's similarly imprecise phrasing of

the corresponding finding of voluntariness, were thus not so clearly or obviously inadequate as to constitute plain error. Likewise, while the court did not incant the word "accept" as it received Umeh's guilty plea, the court prefaced the clerk's solicitation of his plea by directing that "[t]he Clerk may accept the plea" and responded to Umeh's entry of his guilty plea by thanking him, instructing him to step down, and proceeding to discuss scheduling logistics for his sentencing. "As we have noted, 'Rule 11 does not require a district court either to spout a fixed catechism or to use a set of magic words,'" and we decline to do so here. United States v. Rodríguez-Adorno, 852 F.3d 168, 174 (1st Cir. 2017) (quoting Jones, 778 F.3d at 382).

## III.

All fourteen of Umeh's challenges fall short on the second or third prongs of plain-error review, leaving no basis on which to vacate his conviction. We therefore **affirm**.