FILED
United States Court of Appeals
Tenth Circuit

January 9, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL ECKSTEIN,

    Defendant - Appellant.

No. 24-3138

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:22-CR-20040-HLT-1)**
_____

Justin A. Lollman, Gable Gotwals, Tulsa, Oklahoma, for Appellant.

Jared S. Maag, Assistant United States Attorney (Duston J. Slinkard, Acting United States Attorney with him on the briefs), District of Kansas, Topeka, Kansas, for Appellee.
_____

Before **BACHARACH**, **MURPHY**, and **ROSSMAN**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal grew out of a disagreement between a criminal defendant and his attorney after they signed a plea agreement with the government.

The district court discussed the disagreement with the defendant and his attorney, and the matter was resolved.

The appeal addresses the way that the district court resolved the matter: The district court could address the disagreement, but couldn't participate in any plea negotiations. Did the district court cross that line? We answer *no*.

**1.    The district court addresses a disagreement between the defendant and his attorney.**

The criminal charges against the defendant included fourteen counts that could have resulted in life imprisonment and forfeiture of assets.[1] The government negotiated with defense counsel and appeared to reach an agreement: The government would drop thirteen of the counts, and the defendant would plead guilty to one count (distribution of methamphetamine). The defendant, his retained attorney, and the government signed the agreement; so the district court scheduled a change-of-plea hearing with the expectation that the defendant would plead guilty to one count of distributing methamphetamine.

At the change-of-plea hearing, however, the defendant said that he needed more information before he could decide whether to plead guilty.

---

[1]     These charges involved one count of conspiracy to distribute and possess methamphetamine with an intent to distribute, eleven counts of distributing methamphetamine, one count of possessing methamphetamine with intent to distribute, and one count of using a firearm during a drug-trafficking crime.

The defense attorney expressed frustration and requested leave to withdraw, explaining that his relationship with the defendant was "not good." Given this request, the district court conducted an ex parte discussion with the defendant and his attorney. In this discussion, the attorney said that his relationship with his client had "broken down" and left them without any "attorney/client privilege or relationship." Later in the discussion, however, the defendant said that he would plead guilty and carry out the agreement.

## 2. The court didn't participate in plea negotiations.

The defendant points out that the district court couldn't participate in plea negotiations. Fed. R. Crim. P. 11(c)(1). But did the district court's ex parte discussion constitute participation in plea negotiations?

The defendant answers *yes*, but he admittedly failed to object in district court on this ground. When a defendant fails to timely object in district court, we ordinarily apply the plain-error standard. *United States v. Herrera*, 51 F.4th 1226, 1261 (10th Cir. 2022). Under this standard, the defendant must satisfy a rigorous burden, showing not only that the district court erred but that the error itself was obvious and prejudicial. *United States v. Marshall*, 307 F.3d 1267, 1270 (10th Cir. 2002).

The parties disagree over the applicability of the plain-error standard. We need not resolve this disagreement because the defendant hasn't shown participation of the district court in plea negotiations.

The district court is prohibited from participating in plea discussions. Fed. R. Crim. P. 11(c)(1). This prohibition serves three purposes:

1.  Minimizing the risk that defendant is coerced into pleading guilty,

2.  preserving the district court's impartiality, and

3.  avoiding the appearance of impropriety.

*United States v. Cano-Varela*, 497 F.3d 1122, 1132 (10th Cir. 2007).

Participation is prohibited regardless of whether it is explicit or implicit. The participation is explicit when a district court directly injects itself into plea negotiations. But the rule doesn't prohibit a court from every comment about a plea. *Id*. For example, a district court can comment about a plea when disallowing an extension of the deadline to enter a plea. *Id*. at 1132–33. But the prohibition may encompass a court's discussion about how a guilty plea would affect the eventual sentence. *Id*. at 1133. Aside from these settings, however, gray areas often arise, requiring us to focus on the context for the district court's involvement. *See United States v. Sandoval-Enrique*, 870 F.3d 1207, 1218 (10th Cir. 2017) ("The inquiry into whether the district court improperly participated in the parties' plea negotiations depends on 'the particular facts and circumstances,' which 'should be assessed, not in isolation, but in light of the full record.'" (quoting *United States v. Davila*, 569 U.S. 597, 610–12 (2013))). The context here involves a district court's dilemma when a defendant balks at

4

pleading guilty after signing a plea agreement and defense counsel asks to withdraw.

To make an informed decision about counsel's motion to withdraw, the court asked the defendant and his attorney for their perspectives. The defendant answered, explaining that he needed more information before he could decide whether to plead guilty. But if the court were to let the attorney withdraw, who would inform and advise the defendant? Perhaps the defendant would get a new attorney. But the attorney would need time to gather enough information to advise the defendant. In the meantime, would the same plea offer remain available to the defendant? No guarantee existed because the government could revoke the plea offer any time before the district court accepted it. *United States v. Novosel*, 481 F.3d 1288, 1293 (10th Cir. 2007).

The court shared that possibility with the defendant, explaining that the government didn't have to keep the plea offer open indefinitely. The defendant tells us that this explanation constituted the district court's participation in plea negotiations by pressing for an immediate decision on the plea. But the defendant had already accepted the plea offer and there were no ongoing negotiations. The only immediate question was whether to let the attorney withdraw, and that decision could trigger a delay without any assurance about when the defendant would pick a new attorney or decide on the plea.

5

The court tried to explain the dilemma to the defendant, assuring him twice that (1) the court didn't know whether the plea offer was good or bad and (2) there wasn't any pressure on him to accept the plea offer. With these assurances, the court offered three options:

1. Proceed with the change of plea that day,

2. start the process of getting a new attorney, or

3. delay the proceedings for two days so that the defendant could think it over and consult with others before deciding what to do.

The defendant insists that the court pressed him by asking what he wanted to do "right now." The defendant apparently treats that question as a demand to say "right now" whether he wanted to plead guilty. But this characterization is difficult to square with the district court's offer to postpone the proceedings for two days.

The district court needed to know at some point whether to let defense counsel withdraw. And that decision would turn at least in part on the defendant's decision on how to plead. In these circumstances, we conclude that the court didn't participate in plea negotiations by informing the defendant that the government could revoke its offer before he decided on his plea.

3.   **The court didn't prejudice the defendant by failing to inform him that he had a right to appointed counsel.**

The defendant also complains about what happened after he decided to accept the plea agreement. At that point, the court needed to take the defendant's guilty plea. Taking that plea required the court to inform the defendant of specific rights, including his right to counsel and appointment of counsel if he couldn't afford to hire his own attorney. Fed. R. Crim. P. 11(b)(1)(D). The court told the defendant that he had the right to counsel, but failed to add that this right included appointment of counsel upon a showing of financial need.

The defendant didn't object, and the parties agree that the plain-error standard applies. Under this standard, we must disregard even obvious errors unless the defendant shows an effect on his substantial rights. *United States v. Tignor*, 981 F.3d 826, 828 (10th Cir. 2020).[2] In our view, the defendant failed to show such an effect.

The defendant argues that after his attorney had asked to withdraw, the district court needlessly injected uncertainty about the availability of appointed counsel. But the court wasn't taking the guilty plea at that point; the explanation of rights was required only later—when the district court took the guilty plea. Fed. R. Crim. P. 11(b)(1)(D). So prejudice turns on

---

[2]   A defendant must also show that the district court erred and that the error was obvious. *See* p. 3, above. But the government concedes the existence of an obvious error.

the possibility that the defendant would have pleaded not guilty if the court had explained the right to appointed counsel when taking the plea. *See United States v. Edgar*, 348 F.3d 867, 872 (10th Cir. 2003) (stating that for a different violation of Rule 11, prejudice turns on whether the defendant would have pleaded not guilty if the district court had explained that the plea agreement waived the right to appeal or collaterally challenge the sentence).

Three factors suggest that this possibility was remote:

1. The defendant had already confirmed that he would carry out the plea agreement.

2. The defendant had been told three times that he had the right to an attorney.

3. The defendant had earlier acknowledged that he understood his right to appointment of counsel if he couldn't afford to hire an attorney.

First, the defendant had already signed the plea agreement and stated that he wanted to carry it out. The defendant attributed that statement to the court's admonition that the plea agreement might not remain available, but we've rejected the defendant's characterization of that admonition as improper participation in the plea negotiations. *See* Part 2, above. Once the defendant confirmed his willingness to carry out the plea agreement, he would have had little reason to change his mind if he had been told that he could get an appointed attorney. After all, appointment of another attorney would require time for that attorney to get up to speed. And the

8

government had no obligation to continue offering the plea agreement while the defendant reconsidered his options. *See* p. 5, above.

Second, the defendant was told three times that he had the right to an attorney throughout the proceedings. These disclosures came in the initial appearance, the plea agreement itself, and the colloquy preceding the guilty plea.

Third, a magistrate judge had told the defendant at his initial appearance that he was entitled to appointed counsel if he couldn't afford to hire an attorney, and the defendant acknowledged that he understood that entitlement. Granted, that acknowledgment had taken place roughly two years earlier. But we have little reason to speculate that the defendant had forgotten that right with the passage of time. *See United States v. Ferrel*, 603 F.3d 758, 763 (10th Cir. 2010) ("[A] defendant who receives the information omitted by the district court from other sources generally cannot demonstrate that he would not have pleaded guilty had the court also so informed him."); *see also United States v. Umeh*, 132 F.4th 573, 583 (1st Cir. 2025) (stating that "defendants may 'be presumed to recall information provided to them prior to the plea proceeding,' such as at their initial appearance" (quoting *United States v. Vonn*, 535 U.S. 55, 75 (2002))).

With the backdrop of these three factors, we consider the possibility that the defendant might have changed his plea if he had been reminded of

9

his right to appointed counsel. The defendant has presented us little reason to consider this as more than a remote possibility, and he bears the burden of proof. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (stating that "a defendant who seeks reversal after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea"). We thus conclude that the defendant hasn't shown an effect on his substantial rights.

**4.    The defendant hasn't shown cumulative prejudice.**

We can reverse when two or more plain errors combine to create prejudice. *United States v. Starks*, 34 F.4th 1142, 1169, 1175 (10th Cir. 2022). Here, however, we have only one possible error: the district court's failure to tell the defendant that he had the right to appointed counsel. So the defendant hasn't shown multiple errors and can't prevail on a theory of cumulative prejudice. *See United States v. Joseph*, 108 F.4th 1273, 1287 n.5 (10th Cir. 2024) ("Because there was but a single error, there could be no cumulative error.").

**5.    Disposition**

We affirm the conviction because

- the district court didn't participate in plea negotiations and

- the defendant hasn't shown an effect on his substantial rights from the district court's failure to remind him about his right to appointed counsel.

10